## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER MARTINEZ,

      Plaintiff,

vs.                                No. CIV 14-0992 JB/KK

GUADALUPE COUNTY; THE GEO
GROUP, INC.; CORIZON, INC.; DR.
MARK E. WALDEN; KATHERINE
ARMIJO; JOHN DOE, INC. (unidentified
flooring contractor); and JOHN DOES 1-6
(unidentified CEO Group employees or agents),

      Defendants.

### MEMORANDUM OPINION AND AMENDED ORDER[1]

    **THIS MATTER** comes before the Court on: (i) Defendant Dr. Mark E. Walden's

Motion for Summary Judgment, filed April 2, 2015 (Doc. 38)("Walden Motion"); (ii)

Defendants Guadalupe County and GEO's Motion for Summary Judgment (Regarding Failure to

---

[1]The Court issued an Order, filed March 22, 2016 (Doc. 77)("Order 1"), granting in part Defendant Dr. Mark E. Walden's Motion for Summary Judgment, filed April 2, 2015 (Doc. 38), and Defendant[s] Corizon & Katherine Armijo's Motion for Summary Judgment and Joinder & Adoption of Defendant Mark E. Walden's Motion for Summary Judgment [Doc. #38] and Defendant Mark E. Walden's Memoranda Brief in Support of Motion for Summary Judgment [Doc. #39] and Defendants Guadalupe County and GEO's Motion for Summary Judgment (Regarding Failure to File Tort Claim Notice and Failure to Exhaust Administrative Remedies) and Memorandum of Law in Support and Statement of Additional Authorities, filed April 6, 2015 (Doc. 41). The Court also issued an Order, filed March 31, 2016 (Doc. 79)("Order 2"), dismissing without prejudice Defendants Guadalupe County and GEO's Motion for Summary Judgment (Regarding Failure to File Tort Claim Notice and Failure to Exhaust Administrative Remedies) and Memorandum of Law in Support and Statement of Additional Authorities, filed April 6, 2015 (Doc. 40)("MSJ 2"). In its Orders, the Court stated that it may, "at a later date issue a Memorandum Opinion more fully detailing its rationale for this decision." Order 1 at 1 n.1; Order 2 at 1 n.1. This Memorandum Opinion and Amended Order is the promised opinion. This Memorandum Opinion and Amended Order also amends Order 2. In Order 2, the Court dismissed without prejudice the MSJ 2. See Order 2 at 1. Instead of dismissing the MSJ 2, the Court will instead leave the MSJ 2 for the state court to decide.

File Tort Claim Notice and Failure to Exhaust Administrative Remedies) and Memorandum of Law in Support, filed April 6, 2015 (Doc. 40)("MSJ 2"); and (iii) Defendant[s] Corizon & Katherine Armijo's Motion for Summary Judgment and Joinder & Adoption of Defendant Mark E. Walden's Motion for Summary Judgment [Doc. #38] and Defendant Mark E. Walden's Memoranda Brief in Support of Motion for Summary Judgment [Doc. #39] and Defendants Guadalupe County and GEO's Motion for Summary Judgment (Regarding Failure to File Tort Claim Notice and Failure to Exhaust Administrative Remedies) and Memorandum of Law in Support and Statement of Additional Authorities, filed April 6, 2015 (Doc. 41)("MSJ 3"). The Court held a hearing on June 23, 2015. The primary issues are: (i) whether Plaintiff Christopher Martinez was a "prisoner" as the Prison Litigation Reform Act, 42 U.S.C. § 1997(e)(a) ("PLRA") defines that word, thus requiring that he exhaust available administrative remedies before filing suit for claims under 42 U.S.C. § 1983; and (ii) whether Martinez exhausted the administrative remedies available to him with respect to his federal claims. The undisputed evidence shows that Martinez failed to exhaust the administrative remedies available to him with respect to the federal claims he asserts against Defendants Dr. Mark E. Walden, Corizon, Inc., and Katherine Armijo as the PLRA requires. It is undisputed that Martinez does not assert any federal claims against Defendants Guadalupe County and the GEO Group, Inc. Accordingly, the Court will grant in part the Walden Motion and the MSJ 3. The Court will grant in part summary judgment -- on the federal claims that Martinez asserts against Walden, Corizon, Inc., and Armijo -- and will leave it for the state court to decide whether Walden, Corizon, Inc., and Armijo are entitled to summary judgment on Martinez' state law claims. The Court will leave

the MSJ 2 for the state court to decide.  Because no federal claims remain before the Court and because Walden removed this case from state court, the Court remands Martinez' case and remaining state law claims to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

## FACTUAL BACKGROUND

"Plaintiff was an inmate of the New Mexico Corrections Department ('NMCD') and incarcerated at the [Guadalupe County Correctional Facility] at the time of the incident that forms the basis of this lawsuit."  Defendant Dr. Mark E. Walden's Memorandum Brief in Support of Motion for Summary Judgment ¶ 1, at 2, filed April 2, 2015 (Doc. 39)("MSJ 1")(setting forth this fact).[2]  See MSJ 3 ¶ 1, at 2 (setting forth a similar fact);[3] Plaintiff's Brief in Opposition to Defendants Corizon, Armijo and Walden's Motions for Summary Judgment on Failure to Exhaust Administrative Remedies and State Law Claims ¶ 1, at 2, filed April 23, 2015 (Doc. 49)("MSJs 1 & 3 Response")[4](not disputing the proposed facts in the MSJ 1 and the MSJ

---

[2]The three summary judgment motions set forth almost identical facts.  To avoid redundancy, where the facts in the motions are substantively identical, the Court will quote from the MSJ 1, cite its companion facts in the other motions, and then drop a footnote to provide the exact fact proposed in the other motions so that the parties can ensure that the Court is not omitting anything.  The Court will also cite the relevant portion of Martinez' response to each motion's facts to show whether the proposed fact is disputed or undisputed.

[3]The MSJ 3 states: "Plaintiff was an inmate, in the custody of the New Mexico Corrections Department (hereinafter 'NMCD') and was incarcerated at Guadalupe County Correctional Facility (hereinafter 'GCCF'), at the time of the incident which forms the basis of his lawsuit."  MSJ 3 ¶ 1, at 2.

[4]Martinez responded to both the MSJ 1 and MSJ 3 in the MSJs 1 & 3 Response.

3); MSJ 2 ¶ 1, at 4 (setting forth a similar fact);[5] Plaintiff's Brief in Opposition to the GEO

Defendants' Motion for Summary Judgment ¶ 1, at 1, filed June 5, 2015 (Doc. 63)("MSJ 2

Response"); First Amended Complaint for Personal Injury Arising from Negligence and the

Deprivation of Civil Rights ¶ 1, at 1, October 31, 2014 (Doc. 1-1)("FAC").  "On or about August

12, 2011, while incarcerated at GCCF, Plaintiff [sustained a bimalleolar fracture[6] of his ankle]

while playing handball."  MSJ 1 ¶ 3, at 2 (setting forth unmodified version of this fact).  See

MSJ 3 ¶ 4, at 2 (setting forth a similar fact);[7] MSJs 1 & 3 Response ¶ 3, at 2 (not disputing the

MSJ 1's proposed fact); id. ¶ 4, at 3 (not disputing the MSJ 3's proposed fact); MSJ 2 ¶ 2, at 4

(setting forth a similar fact);[8] MSJ 2 Response ¶ 2, at 1 (not disputing the MSJ 2's proposed

fact); FAC ¶¶ 22-28, at 4.[9]  "On August 12, 2011, Plaintiff was seen in the GCCF medical unit

---

[5]The MSJ 2 states: "Plaintiff was a New Mexico Corrections Department 'NMCD' inmate incarcerated at GCCF at the time of the incident that forms the basis of this lawsuit." MSJ 1 ¶ 1, at 4.

[6]"A fracture of the lower tibia which affects the internal (medial) and external (lateral) malleolus."  Bimalleolar fracture, Segen's Medical Dictionary, http://medical-dictionary.thefreedictionary.com/bimalleolar+fracture (last visited July 12, 2016).  The malleolus is either of the two bony prominences on either side of the ankle.  Malleolus, Segen's Medical Dictionary, http://medical-dictionary.thefreedictionary.com/malleolus (last visited July 12, 2016).

[7]The MSJ 3 states: "On or about August 12, 2011, Plaintiff was injured, while incarcerated at GCCF, injuring his ankle."  MSJ 3 ¶ 4, at 2.

[8]The MSJ 2 states: "Plaintiff claims that he broke his ankle at GCCF on August 12, 2011, while playing handball with other inmates."  MSJ 2 ¶ 2. at 4.

[9]Walden asks the Court to find undisputed that, "[o]n or about August 12, 2011, while incarcerated at GCCF, Plaintiff injured his ankle while playing handball."  MSJ 1 ¶ 3, at 2 (citing

- 4 -

and treated by Dr. Walden shortly after sustaining an ankle injury." MSJ 1 ¶ 4, at 3 (setting forth

this fact). See MSJ 3 ¶ 5, at 3 (setting forth a similar fact);[10] FAC ¶ 37, at 5; id. ¶ 41, at 6.[11]

---

Complaint ¶¶ 22, 23, 24, and 28, at 4). Martinez responds: "Admitted that Plaintiff sustained a bimalleolar fracture of his ankle while playing handball at Guadalupe County Correctional Facility." MSJ 1 Response ¶ 3, at 2. The Complaint, upon which Walden relies for his asserted fact, notes that "Plaintiff's foot immediately stopped sliding, and Plaintiff's body weight and momentum rolled his ankle over, causing a bimalleolar fracture of the ankle." Complaint ¶ 27, at 4. None of the Defendants dispute this characterization of Martinez' injury. See Defendant Dr. Mark E. Walden's Reply in Support of Summary Judgment *passim*, filed May 7, 2015 (Doc. 53)("MSJ 1 Reply"); Defendants Guadalupe County and GEO's Reply in Support of Motion for Summary Judgment (Regarding Failure to File Tort Claim Notice and Failure to Exhaust Administrative Remedies) *passim*, filed June 18, 2015 (Doc. 64)("MSJ 2 Reply"); The Defendants Corizon & Katherine Armijo's Motion for Summary Judgment and Joinder & Adoption of Defendant Mark E. Walden's Reply in Support of Motion for Summary Judgment [Doc. #53] and the GEO Defendants Reply in Support of Motion for Summary Judgment [Doc. #13] *passim*, filed May 18, 2015 (Doc. 59)("MSJ 3 Reply"). The Court will therefore modify Walden's proposed fact to reflect the specific injury that Martinez suffered rather than vaguely stating that the "Plaintiff injured his ankle." MSJ 1 ¶ 3, at 2.

[10]The MSJ 3 states: "On August 12, 2011, Plaintiff was seen and treated, by Corizon personnel, in the GCCF Medical Unit, including Dr. Walden, shortly after sustaining his ankle injury." MSJ 3 ¶ 5, at 3. The proposed fact in the MSJ 3 differs from the similar proposed fact in the MSJ 1 in one respect: it asserts that Corizon, Inc. personnel, other than just Walden, saw and treated Martinez. The allegations in the Complaint upon which the MSJ 3 relies for this fact say nothing about other Corizon, Inc. personnel treating Martinez. Accordingly, the Court will not adopt that portion of the MSJ 3's proposed fact, but will instead adopt only the MSJ 1's proposed fact, which does not mention other Corizon, Inc. personnel.

[11]Martinez disputes the proposed facts in the MSJ 1 and MSJ 3, stating: "Denied that Plaintiff was 'treated' by Defendant Walden. Plaintiff did not consent to having Walden touch him, let alone treat him. Walden committed assault and battery on Plaintiff, after denying Plaintiff's second request to be taken to a hospital for treatment and ignoring Plaintiff's screams of 'Don't touch me.'" MSJs 1 & 3 Response ¶ 4, at 2 (disputing the proposed fact in MSJ 1); id. ¶ 5, at 3 (setting forth a verbatim response to the MSJ 3's proposed fact).
    The local rules state:

"Plaintiff[] [said] that he wanted to be taken to the hospital for treatment of his broken leg, where there was an emergency room, x-rays, anesthetic, and a doctor he could have confidence in." MSJs 1 & 3 Response ¶ 8, at 4 (setting forth unmodified version of this fact).  See Plaintiff Christopher Martinez' Answers to Defendant the GEO Group, Inc.'s First Set of Interrogatories at 1-2, filed April 23, 2015 (Doc. 49-1)("Answers to GEO Interrogatories"); id. at 5-6; Plaintiff Christopher Martinez' Responses to Defendant Dr. Mark E. Walden's First Set of Interrogatories and Requests for Production of Documents at 7, filed April 23, 2015 (Doc. 49-2)("Answers to Walden Interrogatories").[12]  "Plaintiff . . . screamed at [Walden] 'Don't touch me' and demanded

---

The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  Martinez does not cite any evidence to dispute the proposed facts in the MSJ 1 or the MSJ 3.  Moreover, whether Martinez consented to Walden's treatment, whether Walden committed assault and battery while treating Martinez' ankle, and whether Walden committed any constitutional violations while treating Martinez are legal conclusions which the Court will, if necessary, resolve in its Analysis.  The Court will therefore deem the proposed fact undisputed.

[12]Martinez asks the Court to find it undisputed that the "Plaintiff's grievance regarding Defendant Walden was that he wanted to be taken to the hospital for treatment of his broken leg, where there was an emergency room, x-rays, anesthetic, and a doctor he could have confidence in."  MSJs 1 & 3 Response ¶ 8, at 4.  Walden responds: "Plaintiff's statement is not a statement of undisputed material fact, but rather an argument and opinion as to what medical treatment he should have received."  MSJ 1 Reply ¶ 8, at 3.
The Court agrees with Walden insofar as Martinez characterizes his statements as a "grievance."  MSJs 1 & 3 Response ¶ 8, at 4.  Whether Martinez' statements constitute a grievance is a legal dispute that the Court will resolve in its Analysis.  The remainder of

that he be taken to the hospital."  MSJs 1 & 3 Response ¶ 9, at 4 (setting forth unmodified version of this fact).  See Answers to GEO Interrogatories at 1-2; id. at 5-6; Answers to Walden Interrogatories at 7.[13]  "Walden ignored Plaintiff's verbal efforts to resolve the issue, declaring that Plaintiff's injury wasn't too bad [and] ordering medical staff and correctional staff to 'hold him down' . . . ."  MSJs 1 & 3 Response ¶ 1, at 4 (setting forth unmodified version of this fact).[14]

---

Martinez' proposed fact is not an argument, but is instead Martinez' characterization of his statements about his treatment.  Martinez is free to offer his opinions about his treatment; indeed, whether he offered those opinions in the proper format is one of the central legal issues in this case.  Because Walden has not offered any evidence to contradict Martinez' proposed fact, the Court will deem it undisputed.

[13]Martinez asks the Court to find undisputed that the "Plaintiff did not give consent for treatment by Walden, screamed at him 'Don't touch me' and demanded that he be taken to the hospital."  MSJs 1 & 3 Response ¶ 9, at 4.  Walden responds: "Plaintiff's statement regarding consent is not a statement of undisputed material fact but rather an argument that is not relevant to the issues presented in Dr. Walden's Motion for Summary Judgment for Failure to Exhaust Administrative Remedies."  MSJ 1 Reply ¶ 9, at 3.  The Court agrees with Walden regarding Martinez' statement about consent.  Whether Martinez consented to Walden's treatment is a legal dispute and not a factual one.  The remainder of Martinez' proposed fact is not an argument; as Walden has not offered any evidence to controvert it, the Court will deem it undisputed.

[14]Martinez asks the Court to find undisputed that "Walden ignored Plaintiff's verbal efforts to resolve the issue, declaring that Plaintiff's injury wasn't too bad, ordering medical staff and correctional staff to 'hold him down,' and proceeding with a procedure that amounted to torture and to which Plaintiff did not consent."  MSJs 1 & 3 Response ¶ 10, at 4.  Walden replies:

> Denied.  Dr. Walden exercised his medical judgment when treating Plaintiff, who was a prisoner at the facility where Dr. Walden was the attending physician.  Plaintiff's only support for this statement is his own self-serving answers to Interrogatories with no independent corroborating evidence.  As such, this is insufficient to present an issue of material fact in opposition to a Motion for Summary Judgment.

"The following morning Plaintiff spoke to the Warden, and Plaintiff's transport to the hospital

was authorized, and he was taken to the hospital that morning."  MSJs 1 & 3 Response ¶ 11, at 4

_____

MSJ 1 Reply ¶ 10, at 3.

     First, that Martinez has offered only his interrogatory answers to support his proposed
facts does not, by itself, mean that the Court cannot consider it for summary judgment purposes.
The Court has previously said:

> There is no requirement that evidence be corroborated or be from a[] neutral
> source.  To prevail on summary judgment, there must be no genuine question of
> material fact.  When one party presents evidence, even its own self-serving
> affidavits, and the other party does not present evidence that controverts the first
> party's evidence, the fact is undisputed, and no genuine issue of material fact
> exists.

Advanced Optics Elecs., Inc. v. Robins, No. CIV 07-0855 JB/GBW, 2011 WL 1103833, at *6
n.4 (D.N.M. March 11, 2011)(Browning, J.).  Especially because Walden does not offer any
evidence to contradict Martinez' proposed facts, that Martinez relies only on his interrogatory
answers is not fatal to his proposed facts.

     Second, Martinez' statements regarding torture and consent are legal arguments; the
Court will therefore not deem them undisputed facts.  Third, the Court will deem Martinez'
proposed fact that Walden "ignored verbal efforts to resolve the issue" undisputed, because that
fact is Martinez' opinion "rationally based on [his] perception" and is admissible under rule 701
of the Federal Rules of Evidence if Martinez testifies as a lay witness.  Fed. R. Evid. 701.
Fourth, the Court will adopt Walden's statements "declaring that Plaintiff's injury wasn't too bad
[and] ordering medical staff and correctional staff to 'hold him down'" as undisputed, because
Walden has not offered any evidence to contradict them.

     Further, although Walden did not object to these statements as hearsay, there would
likely not be any hearsay issues with those statements.  Ordering the staff to hold Martinez down
is a direct command and not a statement offered to prove the truth of the matter asserted.  See
United States v. Balou, 59 F. Supp. 3d 1038, 1073 (D.N.M. 2014)(Browning, J.)("These
paragraphs are commands, directives, or mandates, and thus have no truth value, because they
assert no facts."); United States v. White, 639 F.3d 331, 337 (7th Cir. 2011)(noting that "a
command is not hearsay because it is not an assertion of fact").  Walden's other statement -- that
Martinez' injury was "not too bad" -- is also not hearsay, because Martinez likely would not
offer that statement for its truth -- i.e., to prove that his injury was not serious -- but instead to
show Walden's mindset -- i.e., that Walden did not think his injury was that serious.
Accordingly, the Court will adopt these portions of Martinez' proposed fact as undisputed.

(setting forth unmodified version of this fact).  <u>See</u> Answers to GEO Interrogatories at 1-2; <u>id.</u> at 5-6; Answers to Walden Interrogatories at 7.[15]  "Mid-morning [Plaintiff] was transported to the hospital for X-rays."  Answers to GEO Interrogatories at 2 (setting forth unmodified version of this fact).[16]  <u>See</u> MSJ 3 Reply.

"Plaintiff's complaint against the GEO Defendants was filed on August 12, 2013."  MSJ 2 Response ¶ 1, at 2 (setting forth this fact).  <u>See</u> MSJ 2 Reply at 3 (not disputing this fact). "Plaintiff was not incarcerated when he filed his original Complaint in New Mexico state court on August 12, 2013."  MSJ 2 ¶ 3, at 4 (setting forth this fact).  <u>See</u> MSJ 2 Response ¶ 3, at 1 (not disputing this fact); Complaint for Personal Injury and Damages, filed in state court on August 12, 2013, filed in federal court on November 16, 2014 (Doc. 15-1)("Complaint").  "Plaintiff never served [Guadalupe] County with a tort claim notice prior to filing his original complaint." MSJ 2 ¶ 5, at 4 (setting forth this fact).  <u>See</u> MSJ 2 Response ¶ 5, at 1 (not disputing this fact). The GEO Group operated the Guadalupe Facility pursuant to a contract it has with Guadalupe County.  <u>See</u> MSJ 2 at 1; FAC ¶ 3, at 2.[17]  Guadalupe County is a subdivision of the State of New Mexico.  <u>See</u> FAC ¶ 2, at 2; GEO Answer ¶ 2, at 1.

---

[15]The Court has handled Walden's sole dispute with this fact in note 14, <u>supra</u>.

[16]The Court has handled Walden's sole dispute with this fact in note 14, <u>supra</u>.

[17]The FAC states that the GEO Group operated the Guadalupe Facility pursuant to a contract with the New Mexico Corrections, but Guadalupe County and the GEO Group deny this.  <u>See</u> Certain Defendants' Answer to Plaintiffs First Amended Complaint for Personal Injury Arising from Negligence and the Deprivation of Civil Rights ¶ 3, at 1, filed November 6, 2011 (Doc. 15-5)("GEO Answer").

"On August 8, 2014, Plaintiff was an NMCD inmate incarcerated at Lea County Corrections Facility ('LCCF') at the time he filed his First Amended Complaint."  MSJ 1 ¶ 2, at 2 (setting forth this fact).  See MSJ 3 ¶ 3, at 2 (setting forth a similar fact);[18] MSJs 1 & 3 Response ¶ 2, at 2 (not disputing the MSJ 1's proposed fact); id. ¶ 3, at 2 (not disputing the MSJ 3's proposed fact); MSJ 2 ¶ 3, at 4 (setting forth a similar fact);[19] MSJ 2 Response ¶ 3, at 1 (not disputing the MSJ 2's proposed fact); Affidavit of Mary Jane Chavez (the Classification Director at the Guadalupe Facility) ¶¶ 3-4, at 1, filed April 2, 2015 (Doc. 39-1)("Chavez Aff."); Offender Physical Location History: Christopher Joseph Martinez at 1-2, filed April 2, 2015 (Doc. 39-2)("Location History").  "On August 8, 2014, Plaintiff filed his First Amended Complaint, naming Corizon defendants for the first time, in this lawsuit."  MSJ 3 ¶ 2, at 2 (setting forth this fact).  See MSJs 1 & 3 Response ¶ 2, at 2 (not disputing this fact); FAC ¶¶ 1-38, at 1-5.  "Plaintiff has not asserted a § 1983 claim, or a claim under another federal law, against the GEO Defendants."  MSJ 2 Response ¶ 3, at 2 (setting forth this fact).  See MSJ 2 Reply at 3 (not disputing this fact).  "None of the allegations included in the Amended Complaint were directed at the GEO Defendants, nor can they be so construed."  MSJ 2 Response ¶ 4, at 2 (setting forth this fact).  See MSJ 2 Reply at 3 (not disputing this fact).

---

[18]The MSJ 3 states: "At the time of the filing of the First Amended Complaint, August 8, 2014, Plaintiff was an inmate incarcerated at the Lea County Correctional Facility (hereinafter 'LCCF')."  MSJ 3 ¶ 3, at 2.

[19]The MSJ 2 states: "However, at the time Plaintiff filed his Amended Complaint on August 8, 2014, he was a NMCD inmate incarcerated at the Lea County Correctional Facility ('LCCF') in Hobbs, New Mexico."  MSJ 2 ¶ 3, at 4.

"Plaintiff's original Complaint contains no claims arising out of alleged improper or adequate medical care; those claims were asserted for the first time in Plaintiff's Amended Complaint."  MSJ 2 ¶ 4, at 4 (setting forth this fact).[20]  "The first time either of the Corizon Defendants was sued by Mr. Martinez for the injuries he alleged to have incurred on August 12, 2011, was August 8, 2014."  MSJ 3 ¶ 9, at 3 (setting forth this fact).  See MSJs 1 & 3 Response ¶ 9, at 3 (not disputing this fact); FAC *passim*.  "The Claims against the Corizon Defendants arise out of their provision of licensed health care medical services to Plaintiff, an NMCD inmate, pursuant to Corizon's contract with NMCD."  MSJ 3 ¶ 10, at 3 (setting forth this fact).  See MSJs 1 & 3 Response ¶ 10, at 3 (not disputing this fact); FAC ¶¶ 82-91, at 11-12.  "Defendant Katherine Armijo was Corizon's Health Services administrator and an employee of Corizon."  MSJ 3 ¶ 8, at 3 (setting forth this fact).  See MSJs 1 & 3 Response ¶ 8, at 3 (not disputing this fact); FAC ¶¶ 14-15, at 3; id. ¶ 78, at 11.

"The New Mexico Department of Corrections has an established grievance procedure."  MSJ 1 ¶ 5, at 3 (setting forth this fact).  See MSJ 3 ¶ 6, at 3 (setting forth a similar fact); MSJs 1 & 3 Response ¶ 5, at 2 (not disputing this fact); Affidavit of Krystal Rivera (the Grievance Lieutenant at the Guadalupe Facility) ¶ 3, at 1, filed April 2, 2015 (Doc. 39-3)("Rivera Aff.").  "The New Mexico Corrections Department had in force and effect, at the time of Plaintiff's

---

[20]Martinez states: "Admitted that Plaintiff's amended complaint added claims of improper medical care, but only against Corizon, Inc., Walden and Armijo.  The amended complaint added no claims against the GEO Defendants."  MSJ 2 Response ¶ 4, at 1.  Martinez does not dispute the proposed fact, but instead offers additional facts.  The Court will therefore deem the proposed facts undisputed.

injury, an established grievance procedure."  MSJ 3 ¶ 6, at 3 (setting forth this fact).  See MSJs 1 & 3 Response ¶ 6, at 3 (not disputing this fact); MSJ 2 ¶ 6, at 4 (setting forth a similar fact);[21] id. ¶ 7, at 5 (setting forth a similar fact);[22] Rivera Aff. ¶ 3, at 1.[23]

"NMCD Policy 10501A(1) sets forth the inmate's responsibilities regarding the grievance process."  MSJs 1 & 3 Response ¶ 1, at 3 (setting forth this fact).  See Defendant Dr. Mark E. Walden's Reply in Support of Summary Judgment ¶ 1, at 2, filed May 7, 2015 (Doc. 53)("MSJ 1 Reply")(not disputing this fact).[24]

Section 150501 of the Grievances Policy states, in pertinent part:

---

[21]The MSJ 2 states: "At all times relevant to this lawsuit, the New Mexico Corrections Department ('NMCD') Inmate Grievance Policy was in effect at GCCF."  MSJ 2 ¶ 6, at 4.

[22]The MSJ 2 states: "A true and correct copy of the NMCD Inmate Grievance Policy in effect at GCCF at the time of the events alleged in Plaintiff's Amended Complaint is included as Attachment 1 to Ms. Rivera's Affidavit."  MSJ 2 ¶ 7, at 5.  Martinez responds: "Admitted that the NMCD policy is attached as Exhibit 1, denied that the Defendants followed the policy in this case."  MSJ 2 Response ¶ 7, at 2.  Martinez does not controvert the proposed fact, but instead offers an additional fact.  The Court will therefore deem the proposed fact undisputed.

[23]Martinez states: "Admitted that the grievance policy was in effect, generally, Plaintiff denies that the policy was followed by Defendants in this case."  MSJ 2 Response ¶ 6, at 1.  As Martinez does not specifically controvert the proposed fact, but instead offers an additional fact, the Court will deem the proposed fact undisputed.

[24]The MSJ 3 Reply notes that Corizon, Inc. and Armijo adopt all arguments set forth in the MSJ 1 Reply and the arguments on pages five through seven of the MSJ 2 Reply.  See MSJ 3 Reply at 1.  Accordingly, when determining whether Corizon, Inc. and Armijo dispute the proposed facts in the MSJs 1 & 3 Response, the Court will rely on the MSJ 1 Reply and cite only the portion of the MSJ 1 Reply that disputes or admits those facts; the Court will not cite the MSJ 3 Reply, as it neither admits nor denies any of the facts that the MSJs 1 & 3 Response asserts.

Before using the formal grievance procedure, an inmate is expected to attempt to resolve the grievance or particular area of concern informally through discussion with the person or persons responsible for the incident, giving rise to the complaint.  The inmate shall first file an informal complaint using the Inmate Informal Complaint Form (CD-150501.3) within five calendar days from the date of the incident giving rise to the complaint.  The inmate shall explain in detail his/her complaint and address their complaint to the Unit Manager or designee in units with a Unit Manager and to the Chief of Security or designee in units without a Unit Manager.  If this informal effort fails to resolve the complaint within five working days of receipt of the complaint, the inmate may file an Inmate Grievance Form (CD-150501.1).  The inmate must file the formal grievance within 20 calendar days of the date of the incident giving rise to the complaint.

The Unit Manager, Chief of Security, or designees' shall review the inmate complaint and make every effort to resolve the complaint at an informal level within five working days from receipt of the complaint.  A copy of all resolved complaints shall be maintained and a copy given to the inmate.  All non-resolved complaints shall be returned to the inmate to be attached to the formal grievance.

A written formal grievance shall be filed using the Inmate Grievance Form (CD-150501.1).  The non-resolved Inmate Informal Complaint shall be attached to the formal grievance and be submitted to the Grievance Officer by depositing the form(s) in an institutional mailbox, a designated Grievance Box or by delivering it in person to the Grievance Officer.  Inmate Grievance Forms will be readily available to inmates in accessible locations within the institution.  All grievances must be signed by the grievant.  Copies of grievances sent to persons other than the Institutional Grievance Officer will be considered informational copies only, not requiring a response.  The Grievance Officer shall notify the grievant of receipt  of a grievance on  an  Inmate 2-Day Notice  of  Receipt of Formal  Grievance Form  (CD-1505001.2).

- 13 -

New Mexico Corrections Department Inmate Grievances Policy CD-150501 at 1,[25] filed April 2,

2015 (Doc. 39-3)("Grievances Policy § 150501").[26]   "Per policy 150500 E[,] it is the policy of

the Department to resolve grievances at the lowest possible level.   Informal resolution is

encouraged."  MSJs 1 & 3 Response ¶ 5, at 4 (setting forth this fact).  See MSJ 1 Reply ¶ 5, at 3

(not disputing this fact); MSJ 3 Reply (not disputing this fact).   "Per policy 150500 D(3) if a

grievance is ruled non-grievable at any level, that decision may not be appealed through the

remaining levels of the grievance procedure."  MSJs 1 & 3 Response ¶ 6, at 4 (setting forth this

fact).  See MSJ 1 Reply ¶ 6, at 3 (not disputing this fact); MSJ 3 Reply (not disputing this fact).

Grievances Policy § 150500 states:

> The following matters are not grievable by inmates:

---

[25]To cite to Grievances Policy § 150501, the Court will use the document's internal pagination -- i.e., the black number in the bottom right-hand corner of each page -- rather than CM/ECF's -- i.e., the blue number in the top right-hand corner of each page.

[26]Walden asks the Court to find it undisputed that the "Plaintiff did not file the required NMCD grievance regarding Dr. Walden's treatment of his ankle injury."  MSJ 1 ¶ 6, at 3. Martinez responds: "Denied.  Plaintiff fully complied with the NMCD grievance procedure regarding his demand that he be taken to the hospital, and Plaintiff prevailed on his grievance." MSJs 1 & 3 Response ¶ 6, at 2.  Walden's proposed fact is legal argument.  The Court will therefore not adopt the proposed fact as undisputed, but will instead address Walden's argument and Martinez' response in its Analysis.
  Corizon, Inc. and Armijo ask the Court to find it undisputed that the "Plaintiff did not file the required NMCD grievance regarding any medical care provided to him, including Dr. Walden's treatment of his ankle."  MSJ 3 ¶ 7, at 3.  Martinez replies: "Denied.  Plaintiff fully complied with the NMCD grievance procedure regarding his demand that he be taken to the hospital, and Plaintiff prevailed on his grievance."  MSJs 1 & 3 Response ¶ 6, at 2.  Corizon, Inc. and Armijo's proposed fact is legal argument.  The Court will thus not adopt the proposed fact, but will address the argument and Martinez' response in its Analysis.

a.      Any matter over which the Corrections Department has no control, for example: parole decisions, sentences, tort claims and claims regarding inmate compensation which is regulated by statute.

b.      Matters involving the loss or delay of mail by the U.S. Postal Service or other carriers, e.g. UPS, Federal Express, etc.

c.      Any matter involving disciplinary procedure and findings.  A separate appeal process is provided by Department policy for disciplinary actions.

d.      Any matter involving a classification decision. A separate appeal process is provided by Department policy for classification actions or placement in Level 6.

e.      Complaints on behalf of other inmates.

f.      The subject of any prior grievance on which a final determination has been made or which is currently under review.

g.      Other matters beyond the control of the Department.

New Mexico Corrections Department Inmate Grievances Policy CD-150500 at 5-6,[27] filed April 2, 2015 (Doc. 39-3)("Grievances Policy § 150500").[28]  Regarding what relief an inmate may obtain through the grievance process, Grievances Policy § 150500 states:

---

[27]To cite to Grievance Policy § 150500, the Court will use the document's internal pagination -- i.e., the black number in the bottom right-hand corner of each page -- rather than CM/ECF's -- i.e., the blue number in the top right-hand corner of each page.

[28]Martinez asks the Court to find undisputed that "[p]er policy 150500 D(2) tort claims are not grievable by inmates."  MSJs 1 & 3 Response ¶ 4, at 3.  Walden responds: "Denied.  As per the NM[CD] policy, claims for incidents over which prison person[ne]l or contractors have no authority are not grievable."  MSJ 1 Reply ¶ 4, at 3.  The portion of the Grievance Policy upon which Martinez relies sets forth seven categories of matters that are not grievable by inmates, but does not specifically mention tort claims.  See Grievance Policy at 10.  The Court

If a grievance is decided in favor of an inmate, appropriate relief shall be provided to the inmate and the Department may, at its discretion, authorize one or more of the following remedies:

    1.     If the grievance involves loss of or damage to personal property, the remedy may be restoration of the property involved or payment of fair market value not to exceed $50.00 for any one item at the discretion of the Department. In no event will replacement or monetary compensation be awarded without a showing of negligence or willful misconduct on the part of Department employees.

    2.     Change of policies, procedures or practices.

    3.     Correction of departmental records.

    4.     Other remedies as appropriate.

Grievances Policy § 150500 at 6-7.[29]

There is also an appeal process available for inmates, which is set forth in Grievances

Policy § 150501:

    1.     If an inmate is not satisfied with the decision of the Warden, the inmate may appeal that decision to the Office of the Secretary of Corrections within seven calendar days of receiving the decision from the Warden. The inmate may appeal by completing the appeal portion of the Inmate Grievance Form and mailing or placing the form in an institutional

---

will therefore not deem Martinez' proposed fact undisputed, but will instead adopt the portion of the Grievance Policy upon which Martinez relies as undisputed.

[29]Martinez asks the Court to find undisputed that "[p]er policy 150500 F money damages are not an available remedy." MSJs 1 & 3 Response ¶ 7, at 4. Walden responds: "Denied. The policy states 'Other remedies as appropriate.'" MSJ 1 Reply ¶ 7, at 3. Although Walden accurately quotes Grievances Policy § 150500, it is unclear whether that provision allows for money damages. The Court will therefore adopt the relevant provision as undisputed and, if necessary, resolve the issue in its Analysis.

mailbox, a designated Grievance Box or by delivering it in person to the Grievance Officer for processing to Central Office.

2.  The Grievance Officer will note the date of receipt of the appeal portion of the Inmate Grievance Form.

3.  The Grievance officer will attach all relevant materials to the appeal and deliver the appeal to the Administrator within five working days of the date of receipt of the appeal portion of the Inmate Grievance Form.

4.  The Grievance Administrator will note the date receipt of the appeal portion of the Inmate Grievance Form.

5.  The Grievance Administrator will conduct any further investigation necessary and present a recommendation to the Secretary or designee, within twenty-five (25) calendar days of receiving the appeal portion of the grievance.  Institutional/prison administrators and employees are prohibited from interfering with or otherwise attempting to influence the review by the Grievance Administrator.

6.  The Secretary or designee will render a final decision on the grievance within ten calendar days of receipt of the appeals portion of the Inmate Grievance Form.

7.  The inmate will be informed in writing of the final decision on the grievance.  A brief and clear description of the reasons for the final decision should accompany the inmate notification.  Copies of this notification will be forwarded to the Warden and Grievance Officer at the institution.

8.  If the grievant is awarded any relief, the Secretary or designee shall assign one or more specific personnel the duty to implement the relief granted within a reasonable period of time.

Grievances Policy § 150501 at 4-5.[30]

---

[30]Guadalupe County and the GEO Group ask the Court to find undisputed that,

"[Krystal] Rivera is the Grievance Lieutenant at GCCF."  MSJ 2 ¶ 6, at 4 (setting forth

this fact).  See MSJ 2 Response ¶ 6, at 1 (not disputing this fact); Rivera Aff. ¶ 1, at 1.

> In her capacity as the Grievance Lieutenant, Ms. Rivera maintains copies and is
> the official custodian of all Informal Complaints, Grievances and Appeals filed by
> inmates at GCCF.  When an inmate submits a Grievance, the standard practice at
> GCCF is to record the Grievance on the grievance log, make a copy of the
> Grievance, and provide it to the inmate, and to place a copy in the grievance file.
> When an inmate submits an Appeal to the Secretary of Corrections, the standard
> practice at GCCF is to record the Appeal on the grievance log, make a copy of the
> Appeal and provide it to the inmate, mail a copy of the Appeal to the Secretary of
> Corrections via certified mail, and place a copy of the Appeal and the certified
> mail receipt in the grievance file.

---

> [a]s reflected in the attached NMCD Inmate Grievance Policy, the grievance
> procedure has three steps: (1) the inmate must submit an Informal Complaint
> within five (5) calendar days of the date of the incident giving rise to his
> complaint; (2) if the informal effort fails to resolve the issue, the inmate must
> submit a formal Grievance within twenty (20) calendar days of the date of the
> incident giving rise to his complaint; and (3) if the inmate is not satisfied with the
> disposition of the Grievance, the inmate must submit his Appeal to the Office of
> the Secretary of Corrections within seven (7) calendar days of receiving the
> decision.

MSJ 2 ¶ 8, at 5.  Martinez responds: "Denied that Defendant has accurately quoted the grievance
policy which actually states that an inmate may submit his Appeal to the Office of the Secretary
of Corrections within seven days by."  MSJ 2 Response ¶ 8, at 2.  It appears that Martinez'
response to this proposed fact is incomplete, but Martinez does not cite any evidence that
controverts the proposed fact.  In any event, it appears that Guadalupe County and the GEO
Group have accurately characterized the Grievances Policy.  To assuage any concerns, however,
the Court will quote the relevant portion of the Grievances Policy directly rather than relying on
the parties' characterizations of those policies.

- 18 -

MSJ 2 ¶ 9, at 5 (setting forth this fact).  <u>See</u> Rivera Aff. ¶ 6, at 2.[31]  "In her capacity as Grievance Lieutenant, Ms. Rivera also prepares and maintains the log of all Grievances and Appeals filed by inmates.  The grievance log reflects, among other things, the date an inmate filed his Grievance and Appeal, and the disposition of the inmate's submissions."  MSJ 2 ¶ 10, at 5-6 (setting forth this fact).  <u>See</u> Rivera Aff. ¶ 7, at 2.[32]

> Ms. Rivera has reviewed her grievance log and all of her grievance records reflecting submissions by Plaintiff on and after the date he broke his ankle,

---

[31]Martinez purports to dispute this fact, stating: "Denied.  Additionally, the 'standard practice' is of no evidentiary value in such a motion.  The issue is what happened to the Appeal that Plaintiff submitted to the Grievance Lieutenant."  MSJ 2 Response ¶ 9, at 2.  The local rule states:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  Martinez fails to comply with the local rules by not citing any evidence in the record to support his assertion.

As to Martinez' relevance argument, the Court has previously explained that "[a]rguments and concerns about the materiality and relevance of a fact do not dispute [it]."  <u>Walton v. N.M. State Land Office</u>, 49 F. Supp. 3d 920, n.2 (D.N.M 2014)(Browning, J.)(citing <u>O'Brien v. Mitchell</u>, 883 F. Supp. 2d 1055, 1058 n.1 (D.N.M. 2012)(Browning, J.)("[The Defendant's] argument that the facts underlying the state criminal case are immaterial does not specifically controvert those facts, and the Court will therefore deem those facts admitted.")).  Accordingly, the Court will deem the proposed fact undisputed and will address materiality, if necessary, in its analysis.

[32]Martinez offers a one-word response to this proposed fact: "Denied."  MSJ 2 Response ¶ 10, at 2.  As Martinez has not pointed to any evidence in the record to contradict this proposed fact, the Court will deem it undisputed.

August 12, 2011.  A true and accurate copy of Ms. Rivera's grievance log for the relevant timeframe is included as Attachment 2 to her Affidavit.  True and accurate copies of all Grievances and Appeals submitted by Plaintiff and relating in any way to the claims made in this lawsuit are included as Attachment 3 to her Affidavit.

MSJ 2 ¶ 11, at 6 (setting forth these facts).  See Rivera Aff. ¶ 8, at 2-3.[33]

"Upon review of her grievance log and grievance records," Rivera confirms as follows:

a.    Plaintiff submitted an Informal Complaint on September 1, 2011, complaining that the condition of GCCF's gym floor caused his ankle injury.  Because Plaintiff submitted this Informal Complaint past the five-day deadline, it was rejected as untimely.

b.    Plaintiff submitted a Grievance concerning the same matter on September 8, 2011.  Despite Plaintiff's failure to follow the proper policy and procedure, GCCF accepted Plaintiff's Grievance.  An investigation was conducted regarding the condition of the gym floor, and the Grievance was deemed 'resolved.'

c.    A copy of the Grievance was returned to Plaintiff on September 27, 2011. According to the NMCD Grievance policy, if Plaintiff was dissatisfied with the outcome of his Grievance, he was required to submit an Appeal to the Secretary of the Department of Corrections within seven (7) calendar days.  If Plaintiff had submitted an Appeal, it would have been recorded in the grievance log and a copy of the Appeal would have been placed in the grievance file.  Both the grievance log and the grievance records reflect that Plaintiff never submitted an Appeal.

d.    Plaintiff never submitted any other Informal Complaint or Grievance regarding the matters alleged in this lawsuit.  Thus, he never submitted any Informal Complaint or Grievance regarding the medical care he received after he suffered his ankle injury.

MSJ 2 ¶ 12, at 6-7 (setting forth these facts).  See Rivera Aff. ¶ 9, at 3-4.[34]

---

[33]Martinez again offers a one-word denial to this proposed fact.  As Martinez points to no evidence in the record to contradict this proposed fact, the Court will deem it undisputed.

## PROCEDURAL BACKGROUND

Martinez filed his original Complaint against the GEO Group and Guadalupe County in state court on August 12, 2013.  See MSJ 2 Response ¶ 1, at 2 (setting forth this fact); MSJ 2 Reply at 3 (not disputing this fact); Complaint for Personal Injury and Damages, filed in state court August 12, 2013, filed in federal court November 16, 2014 (Doc. 15-1)("Complaint").  At the time that Martinez filed his original Complaint, he was not incarcerated.  See MSJ 2 ¶ 3, at 4 (setting forth this fact); MSJ 2 Response ¶ 3, at 1 (not disputing this fact).  In the original Complaint, Martinez asserted a state law negligence claim against the GEO Group and Guadalupe County.  See Complaint ¶¶ 13, 17-20, at 2-4.  Martinez contended that he broke his ankle on August 12, 2011 while playing handball on a gym floor, which he asserted the GEO Group negligently maintained.  See Complaint ¶¶ 10, 12-13, 17-20, at 2-4.  Martinez did not, however, serve Guadalupe County with a tort claim notice before filing his original Complaint.  See MSJ 2 ¶ 5, at 4 (setting forth this fact); MSJ 2 Response ¶ 5, at 1 (not disputing this fact).

On August 8, 2014, Martinez filed the First Amended Complaint.  See FAC at 1.  At that time, he was a New Mexico Correction's inmate incarcerated at the Lea County Corrections

---

[34]Martinez purports to dispute this fact, stating: "Denied that the attached documents accurately reflect the events that occurred relating to Plaintiff's filing of grievances.  Plaintiff did submit a timely Informal Complaint that the Grievance Lieutenant never responded to.  Plaintiff hand delivered his Appeal to the Grievance Lieutenant in a timely manner."  MSJ 2 ¶ 12, at 2. Although Martinez vaguely asserts that the documents upon which Guadalupe County and the GEO Group rely do not support their asserted facts, he does not explain why the documents do not support those facts, or point to a particular document or record that supports his assertion. The Court has reviewed the relevant documents and agrees with Guadalupe County and the GEO Group that they support what they are asserting.  Accordingly, the Court deems the proposed fact undisputed.

Facility in Hobbs, New Mexico.  See MSJ 1 ¶ 2, at 2 (setting forth this fact); MSJ 3 ¶ 3, at 2 (setting forth a similar fact); MSJs 1 & 3 Response ¶ 2, at 2 (not disputing the MSJ 1's proposed fact); id. ¶ 3, at 2 (not disputing the MSJ 3's proposed fact); MSJ 2 ¶ 3, at 4 (setting forth a similar fact); MSJ 2 Response ¶ 3, at 1 (not disputing the MSJ 2's proposed fact); Chavez Aff. ¶¶ 3-4, at 1; Location History at 1-2.  In addition to Guadalupe County and the GEO Group, Martinez names new Defendants in the FAC: Walden, Corizon, Inc., and Armijo.  See MSJ 3 ¶ 2, at 2 (setting forth this fact); MSJs 1 & 3 Response ¶ 2, at 2 (not disputing this fact); FAC ¶¶ 1-38, at 1-5.

Specifically, Martinez asserts five counts in the FAC: (i) Count I -- that Guadalupe County, the GEO Group, John Doe, Inc. (unidentified flooring contractor), John Does 1-6 (unidentified GEO Group employees or agents) were negligent; (ii) Count II -- that Walden violated his civil rights under the Eighth Amendment of the Constitution of the United States of America, the Due Process clause in the Fourteenth Amendment of the Constitution of the United States of America, and the Equal Protection clause of the Constitution of the United States of America in the course of Walden providing medical care to Martinez; (iii) Count III -- that Walden was negligent, and/or committed assault and battery, in the course of providing medical care to Martinez; (iv) Count IV -- that Corizon, Inc. and Armijo negligently operated a medical facility; and (v) Count V -- that Armijo violated Martinez' unspecified constitutional rights.  See FAC passim.  On September 30, 2014, Guadalupe County and the GEO Group filed a motion for summary judgment in the state court, asking the state court to dismiss Martinez' claims against them because he did not exhaust his administrative remedies with respect to those claims, as the

PLRA and N.M. Stat. Ann. § 33-2-11(B) require.   See The GEO Defendants' Motion for Summary Judgment and Memorandum of Law in Support *passim*, filed in state court September 30, 2014, filed in federal court November 6, 2014 (Doc. 15-6)("State MSJ").   On October 31, 2014, the new Defendants -- Walden, Corizon, Inc., and Armijo -- removed the case to federal court with the Guadalupe County and the GEO Group's consent.   See Notice of Removal, filed October 31, 2014 (Doc. 1)("Notice of Removal").

### 1.   __Walden's Motion for Summary Judgment.__

Walden filed a motion for summary judgment, and a separate memorandum brief in support of his motion, on April 2, 2015.   See Walden Motion; MSJ 1.   In the MSJ 1, Walden asks the Court to grant summary judgment in his favor and dismiss all of the claims that Martinez asserts against him -- the claims brought under the Eighth and Fourteenth Amendments, and the state law tort claims -- as a matter of law.   See MSJ 1 at 1.   He notes that the PLRA states: "No action shall be brought with respect to prison conditions under section 1983 or this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted."   MSJ at 4 (quoting 42 U.S.C. § 1997e(a)).   Walden argues that the PLRA requires that a prisoner **must** exhaust all the available administrative remedies before the prisoner can file a lawsuit in federal court.   See MSJ 1 at 4 (emphasis in MSJ 1).   Accordingly, Walden asserts that he is entitled to summary judgment, because Martinez did not exhaust his administrative remedies, as the PLRA requires.   See MSJ 1 at 4.

Walden asserts that the Supreme Court of the United States of America has held that the exhaustion requirement is a mandatory requirement and is not left to the district court's discretion.  See MSJ 1 at 4 (citing Porter v. Nussle, 534 U.S. 516, 524 (2002)(Ginsburg, J.)).  He notes that the United States Court of Appeals for the Tenth Circuit has also held that the exhaustion requirement is mandatory.  See MSJ 1 at 4 (citing Yousef v. Reno, 254 F.3d 1214, 1221 (10th Cir. 2001)(Henry, J.)).  Further, he maintains that the Supreme Court has held that the exhaustion requirement still applies when the administrative procedures cannot grant the remedies sought.  See MSJ 1 at 4 (citing Booth v. Churner, 532 U.S. 731, 741 (2001)(Souter, J.); Woodford v. Ngo, 548 U.S. 81, 85 (2006)(Alito, J.)).  Walden further asserts that "[c]omplete exhaustion of administrative procedures is a prerequisite to suit."  MSJ 1 at 5 (citing Porter v. Nussle, 534 U.S. at 524).  Walden argues that the plaintiff must properly exhaust the administrative remedies, as the applicable prison's procedural requirements require.  See MSJ 1 (citing Jones v. Brock, 549 U.S. 199, 218 (2007)(Roberts, J.)).  He notes that the Tenth Circuit held in Little v. Jones, 607 F.3d 1245 (10th Cir. 2010)(Tacha, J.), that a prisoner who does not complete the grievance process cannot bring a claim in federal court.  See 607 F.3d at 1249.  Finally, Walden argues that an inmate who misses deadlines set by the grievance process cannot then allege that administrative remedies are exhausted for PLRA purposes.  See Jones v. Brock, 549 U.S. at 217-18.

Walden argues that New Mexico law also requires that an inmate exhaust all administrative remedies before filing a lawsuit.  See MSJ 1 at 5.  According to Walden, the applicable New Mexico statute states:

> No court of this state shall acquire subject-matter jurisdiction over any complaint, petition, grievance or civil action filed by any inmate of the corrections department with regard to any cause of action pursuant to state law that is substantially related to the inmate's incarceration by the corrections department **until the inmate exhausts the corrections department's internal grievance procedure**.  **Upon exhaustion of this administrative remedy**, the first judicial proceeding shall be a de novo hearing, unless otherwise provided by law.

MSJ 1 at 5 (quoting N.M. Stat. Ann. § 33-2-11(B) (emphasis in MSJ 1).  Walden asserts that, under New Mexico state law, as under the PLRA, an inmate must exhaust all administrative remedies before he can challenge his treatment during confinement in court.  See MSJ 1 at 5.

Walden notes that Martinez was incarcerated both when Martinez filed this suit against him and when he treated Martinez for his ankle injury.  See MSJ 1 at 6.  Accordingly, Walden argues that both the PLRA and N.M. Stat. Ann. § 33-2-11(B) apply to Martinez' claims.  See MSJ 1 at 6.  He points to the three-step grievance process that New Mexico Corrections had in place at the Guadalupe Facility, and argues that, Martinez failed to comply with this process, because Martinez never used this process to file a grievance regarding the medical treatment he received at the Guadalupe Facility.  See MSJ 1 at 6.  Walden therefore asserts that Martinez failed to exhaust his administrative remedies.  See MSJ 1 at 6.  Walden maintains that this failure to exhaust means that he is entitled to summary judgment on all claims against him as a matter of law and asks the Court to grant the Walden Motion.  See MSJ 1 at 6.

### 2.    Guadalupe County and the GEO Group's Motion for Summary Judgment.

Guadalupe County and the GEO Group filed a motion for summary judgment on April 6, 2015.  See MSJ 2 at 1.  Guadalupe County and the GEO Group ask that the Court grant MSJ 2, because Martinez failed to file a tort claim notice and did not exhaust his administrative

remedies.   See MSJ 2 at 1.   Guadalupe County and the GEO Group assert that, while the FAC

asserts only a single claim against them for negligence, it appears that Martinez may seek to hold

them liable for other alleged violations of his rights under state and/or federal law.   See MSJ 2 at

2-3.   They state that they obtained this conception because of the several non-specific references

to "Defendants" in Count IV.   MSJ at 2 (quoting FAC ¶¶ 74-81, at 10-12).   They next argue that

all of Martinez' claims against them fail as a matter of law for a number of reasons.   See MSJ 2

at 3.

First, Guadalupe County and the GEO Group argue that Martinez must bring all of his

state law claims against Guadalupe County under the New Mexico Tort Claims Act

("NMTCA").   See MSJ 2 at 8 (citing N.M. Stat. Ann. § 41-4-2).   They assert that the NMTCA

requires each person requesting damages from a county to provide written notice -- stating the

time, place and circumstances of the loss or injury -- to the county clerk within ninety days after

the occurrence that gives rise to a claim for which the NMCTA waives immunity.   See MSJ 2 at

8 (citing N.M. Stat. Ann. § 41-4-16(A)).   Guadalupe County and the GEO Group assert that the

NMTCA provides:

> No suit or action for which immunity has been waived under the Tort Claims Act
> shall be maintained and no court shall have jurisdiction to consider any suit or
> action against the state or any local public body unless notice has been given as
> required by this section, or unless the governmental entity had actual notice of the
> occurrence.   The time for giving notice does not include the time, not exceeding
> ninety days, during which the injured person is incapacitated from giving the
> notice by reason of injury.

MSJ 2 at 8 (quoting N.M. Stat. Ann. § 41-4-16(B)).   They assert that "mere awareness" of an

accident does not put a governmental entity on notice under N.M. Stat. Ann. § 41-4-16(A) and

that "actual notice" under N.M. Stat. Ann. § 41-4-16(B) does not require the governmental entity have notice that a lawsuit will be filed, but rather that it have notice of a likelihood that litigation may ensue.  See MSJ 2 at 8 (citing Powell v. N.M. Highway and Transp. Dep't, 1994-NMCA-035, ¶¶ 15-16, 872 P.2d 388, 392 (Donnelly, J.); Callaway v. N.M. Dep't of Corr., 1994-NMCA-049, ¶¶ 5-6, 875 P.2d 393, 396 (Flores, J.)).  Guadalupe County and the GEO Group assert that it is undisputed that Martinez never provided notice of his tort claim to the Clerk of Guadalupe County.  See MSJ 2 at 9.  They also assert that there is no evidence that Guadalupe County had actual notice of the likelihood that litigation might ensue following the alleged incidents.  See MSJ 2 at 9.

Second, Guadalupe County and the GEO Group argue that the Court must dismiss Martinez' claims against them, because Martinez did not exhaust his administrative remedies as the PLRA and N.M. Stat. Ann. § 33-2-11(B) require.  See MSJ 2 at 9.  They maintain that it is undisputed that the Guadalupe Facility had New Mexico Correction's Inmate Grievance Policy in effect at all times relevant to this lawsuit.  See MSJ 2 at 10.  Further, they assert that Martinez did not file any grievance related to his alleged inadequate medical care and that he did not exhaust his administrative remedies with respect to the gym floor's alleged improper maintenance -- because he did not appeal the Warden's decision on this matter to the Secretary of Corrections.  See MSJ 2 at 10-11.  Guadalupe County and the GEO Group maintain that there is no document or witness to support Martinez' argument that he filed an appeal.  See MSJ 2 at 11.  They ask the Court to treat Martinez' affidavit as a "sham," because it states, for the first time, that he attempted to file an appeal -- despite his prior admission to the contrary in his

response to Guadalupe County and the GEO Group's first motion for summary judgment.  MSJ 2 at 11 (citing Affidavit of Christopher Martinez ¶¶ 8-10, at 2, filed February 16, 2015 (Doc. 29-1)("Martinez Aff.); Plaintiff's Brief in Opposition to the GEO Defendants' Motion for Summary Judgment ¶ 7, at 2, filed in state court October 14, 2014, filed in federal court November 6, 2014 (Doc. 15-10)("State MSJ Response")).  Further, they assert that, even if the Court considers Martinez' affidavit, the affidavit does not save his claims from dismissal, because a number of courts have held that "bare, unsupported assertions are insufficient as a matter of law" to defeat a defendant's claim of a failure to exhaust administrative remedies.  MSJ 2 at 12 (citing Sparks v. Foster, 241 F. App'x 467, 474 (10th Cir. 2007)(O'Brien, J.)).  They argue that the Court should conclude, as a matter of law, that Martinez failed to file an appeal and thus failed to exhaust his administrative remedies regarding the condition of the gym floor at the Guadalupe Facility.  See MSJ 2 at 13 (citing Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)(Kelly, J.)).  Guadalupe County and the GEO Group therefore contend that the Court should dismiss all of Martinez' claims against them under the PLRA and under the N.M. Stat. Ann. § 33-2-11(B).  See MSJ 2 at 13.

Guadalupe County and the GEO Group next argue that Martinez had to exhaust all of his administrative remedies because his claims were grievable under the New Mexico Correction's policy.  See MSJ 2 at 13.  They concede "that tort claims" are not grievable under the New Mexico Correction's policy, but give two reasons why Martinez' complaints were grievable under the policy.  MSJ 2 at 14 (citing Grievances Policy § 150500 at 6).  First, Guadalupe County and the GEO Group assert that the policy "clearly states that matters involving the

application of prison policies, rules and procedures, including but not limited to medical care . . . [and] matters relating to conditions of inmate care or supervision within the authority of NMCD or its contractors are grievable."  MSJ 2 at 14 (citing Grievances Policy § 150500 at 5).  They therefore conclude that Martinez' complaints regarding the gym floor and his medical care were "grievable" as the face of the policy indicates.  MSJ 2 at 14.  Second, Guadalupe County and the GEO Group assert that Martinez did not have a "tort claim" until he filed this lawsuit, and that Martinez' grievance about the gym floor, and any grievance he could have filed regarding his medical care, were not "tort claims" during the time he was required to file a grievance.  MSJ 2 at 14-15 (quoting Tort, Black's Law Dictionary (9th ed. 2009); Claim, Black's Law Dictionary (9th ed. 2009)).  They allege that, if the Court were to follow Martinez' logic, "no incident that results in injury to an inmate is grievable under NMCD policy."  MSJ 2 at 15.  Guadalupe County and the GEO Group maintain that the policy merely makes it clear that inmates cannot use the grievance process to seek damages for personal injuries but, instead provides a number of other remedies.  See MSJ 2 at 15 (citing Grievance Policy § 150500 at 6-7).  They also note that the PLRA's exhaustion requirement applies regardless what relief is available through the administrative procedures.  See MSJ 2 at 15 (citing Booth v. Churner, 532 U.S. at 741).  They maintain that Martinez cannot argue that his claims in the FAC were "non-grievable," because it is undisputed that he submitted a grievance regarding the gym floor and that it was not rejected for being "non-grievable."  MSJ 2 at 15.

Guadalupe County and the GEO Group complete their motion by making two final arguments.  See MSJ 2 at 16.  First, they assert that Martinez brought only a state law negligence

claim against them in the Complaint, and thus any new or different state and/or federal claims

against them in the FAC must fail as a matter of law, because of Martinez' failure to exhaust.

See MSJ 2 at 16.  Guadalupe County and the GEO Group also posit:

> Plaintiff may argue that, because he was not incarcerated at the time he filed his
> original Complaint, neither the PLRA nor Section 33-2-11(B) apply. . . .
> Plaintiff's argument, however, fails because as numerous courts have held, with
> respect to claims asserted for the first time in an amended complaint, Plaintiff's
> status as a prisoner for purposes of the PLRA is determined by his status at the
> time he filed the amended complaint.  See, e.g., Rhodes v. Robinson, 621 F.3d
> 1002, 1005 (9th Cir. 2010); Cano v. Taylor, 739 F.3d 1214, 1220 (9th Cir.
> 2014)(holding that the district court should have used the date of the first
> amended complaint instead of the date of original complaint when deciding
> whether certain claims were administratively exhausted according to the PLRA).

MSJ 2 at 16.  Second, they argue that the Court should also dismiss Martinez' negligence claim

against them in the Complaint and reasserted at Count I of the FAC, because they believe the

Court should conclude the relevant date for deciding Martinez' status as an inmate for purposes

of N.M. Stat. Ann. § 33-2-11(B) is the date he filed FAC -- a date when Martinez was

indisputably incarcerated.  See MSJ 2 at 16-17.  Guadalupe County and the GEO Group note that

the United States Court of Appeals for the Ninth Circuit has held that an amended complaint

supersedes the original, rendering the original complaint non-existent and assert that the Court

should find this holding persuasive.  See MSJ 2 at 17 (citing Rhodes v. Robinson, 621 F.3d 1002,

1005 (9th Cir. 2010)(Tashima, J.)).  They note that this holding agrees with the Tenth Circuit's

holding that the PLRA applies to a plaintiff who was not incarcerated when he initiated a civil

action, but was incarcerated when he filed notice of his appeal.  See MSJ 2 at 17 (citing Brown v.

Eppler, 725 F.3d 1221, 1230 (10th Cir. 2013)(Murphy, J.)).  Finally, they argue the Court does

- 30 -

not have subject-matter jurisdiction over Martinez' claim in Count I, because Martinez did not file an appeal of his grievance and thus failed to exhaust his administrative remedies.  See MSJ 2 at 17.  Accordingly, Guadalupe County and the GEO Group ask the Court to grant their motion for summary judgment.  See MSJ 2 at 18.

     **3.**       <u>**Corizon, Inc. and Armijo's Motion for Summary Judgment**</u>.

Corizon, Inc. and Armijo, its Health Services Administrator, filed a motion for summary judgment on all claims against them as a matter of law on April 6, 2015.  See MSJ 3 at 1. Corizon, Inc. and Armijo assert that the Walden Motion, the MSJ 1, and the MSJ 2 conclusively establish the following, and join and incorporate them by reference in their motion:

> 1)    Under Federal Judgment law, Dr. Walden and the Corizon Defendants are entitled to Summary Judgment on all Federal claims asserted against them, pursuant to 42 U.S.C. § 1997(e)(a).
>
> 2)    Under Federal Summary Judgment law, as a matter of law, Plaintiff's State law claims are barred by his failure to exhaust administrative remedies, pursuant to § 33-2-11(B) NMSA 1978.

MSJ 3 at 4.  Corizon, Inc. and Armijo argue that they both meet the NMTCA's definition of a "public employee," because of their provision of licensed medical services pursuant to Corizon, Inc.'s contract with New Mexico Corrections.  MSJ 3 at 4 (quoting <u>Lymon v. Aramark Corp.</u>, 728 F. Supp. 2d 1207, 1219 (D.N.M. 2010)(Browning, J.), <u>aff'd</u>, 499 F. App'x 771 (10th Cir. 2010)).  Corizon, Inc. and Armijo assert that this Court held in <u>Lymon v. Aramark Corporation</u> that Wexford Health Services, Inc., the contract medical provider to New Mexico Correction's Correctional Medical Services, and its employees come within the NMTCA's protections, because "employee" under the NMTCA's § 41-4-15 includes "licensed medical, psychological

or dental arts practitioners providing services to the corrections department pursuant to contract." MSJ 3 at 4-5 (quoting Lymon v. Aramark Corp., 728 F. Supp. 2d at 1219).  Accordingly, Corizon, Inc. and Armijo argue that the NMTCA governs Martinez' state law claims against them and that its statute of limitations thus bars the claims:

> Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death, except that a minor under the full age of seven years shall have until his ninth birthday in which to file.  This subsection applies to all persons regardless of minority or other legal disability.

MSJ 3 at 5 (quoting N.M. Stat. Ann. § 41-4-15(A)).  Corizon, Inc. and Armijo thus ask the Court to grant them summary judgment on Martinez' federal law claims, because of his failure to exhaust administrative remedies as the PLRA requires, and on Martinez' state law claims, because of his failure to exhaust administrative remedies as N.M. Stat. Ann. § 33-2-11(B) requires, and because of his failure to bring claims within its two-year statute of limitations.  See MSJ 23 at 6.

### 4.    Martinez' Response to Walden's, Corizon, Inc.'s, and Armijo's Motions for Summary Judgment.

Martinez responded to the MSJ 1 and the MSJ 3 on April 23, 2015.  See MSJs 1 & 3 Response at 1.  Martinez first argues that there was no need for him to complete all the steps of the grievance procedure, because he prevailed at an early stage in the process.  See MSJs 1 & 3 Response at 1.  He asserts that prevailing in the grievance process means an inmate has "exhausted" his remedies, regardless where in the grievance process an inmate prevails.  MSJs 1 & 3 Response at 1.  Martinez also notes that New Mexico Correction's grievances policy states

- 32 -

that "tort claims" are not grievable by inmates.  MSJs 1 & 3 Response (citing Grievances Policy § 150500 at 6).  Martinez asserts that his claims are not grievable, because they are tort claims, and because the grievance procedure does not give the authority for New Mexico Corrections or the prison's Warden to make an award of money damages.  See MSJs 1 & 3 Response at 2.  He also argues that the only relief he seeks is money damages and that damages is not an available remedy under New Mexico Correction's grievance process, so he had no obligation to exhaust his administrative remedies.  See MSJs 1 & 3 Response at 2.  Further, Martinez argues that Corizon, Inc., Armijo, and Walden carry the burden of proof, and cannot fulfill this burden simply by arguing that "Plaintiff's name is not on the grievance log."  MSJs 1 & 3 Response at 2.

Martinez maintains that the Tenth Circuit law is clear that, "once a prisoner has won all the relief that is available under the institution's administrative procedures, his administrative remedies are exhausted."  MSJs 1 & 3 Response at 5 (citing Ross v. Cty. of Bernalillo, 365 F.3d 1181, 1187 (10th Cir. 2004)(Ebel, J.)).  He also argues that, in the majority of jurisdictions, an inmate's duty to exhaust available administrative remedies is complete when there is no possibility of further relief.  See MSJs 1 & 3 Response at 5.  Martinez asserts that his current situation is like the plaintiff's situation in Ross v. County of Bernalillo, who, after slipping and falling in the shower, submitted a "Pre-Grievance Resolution Form," and received a response that new shower mats had been placed in the shower.  MSJs 1 & 3 Response at 6 (citing Ross v. Cty. of Bernalillo, 365 F.3d at 1183).  Martinez explains that the plaintiff then sued, alleging that the shower was unreasonably dangerous and that the medical treatment he received was inadequate, but the district court dismissed the plaintiff's complaint under the "total exhaustion"

rule, because the district court found he had not exhausted his administrative remedies with respect to the dangerous shower claim.  MSJs 1 & 3 Response at 7 (quoting citing <u>Ross v. Cty. of Bernalillo</u>, 365 F.3d at 1183).  Martinez notes that the Tenth Circuit affirmed, because it found the plaintiff had exhausted his administrative remedies with respect to the dangerous shower claim but not the inadequate medical treatment claim -- but Martinez argues that the dangerous shower claim is the claim relevant to his motion.  <u>See</u> MSJs 1 & 3 Response at 7 (citing <u>Ross v. Cty. of Bernalillo</u>, 365 F.3d at 1184).  Martinez explains that, like the grievance policy at the Guadalupe Facility, the policy in <u>Ross v. County of Bernalillo</u> had an informal procedure and a formal procedure, and the Tenth Circuit held that the plaintiff was not required to proceed through the formal grievance process, because he was successful in the first, informal stage, "and nothing in the record suggested that there was any further relief whatsoever available through the jail procedures."  MSJs 1 & 3 Response at 7 (citing <u>Ross v. Cty. of Bernalillo</u>, 365 F.3d at 1187).

Martinez asserts that he initiated the first stage of the applicable New Mexico Correction's grievance process after fracturing his ankle through "discussion" when he "screamed at Walden: 'Don't touch me' and 'Get me to the hospital.'"  MSJs 1 & 3 Response at 8.  Martinez argues that he continued this "discussion" the following day, when he told the Guadalupe Facility's Warden that he wanted to go to the hospital.  MSJs 1 & 3 Response at 8.  Martinez maintains this grievance process was then subsequently completed when he was taken to the hospital, and so he had no further obligation to pursue the process by filing an informal complaint or a formal complaint.  <u>See</u> MSJs 1 & 3 Response at 8-9.  He maintains that he obtained the relief he sought -- transport to the hospital -- and, because this relief was the only

relief available under the New Mexico Correction's policy, his administrative remedies were exhausted.  See MSJs 1 & 3 Response at 9.

Martinez also maintains that his only remaining claim against Walden, Corizon, Inc., and Armijo is a tort claim for the illegal touching, for which he seeks monetary damages.  See MSJs 1 & 3 Response at 9.  He asserts that, under the New Mexico Correction's policy, however, tort claims are not grievable and that monetary damages for personal injury are not an available remedy.  See MSJs 1 & 3 Response at 9.  Martinez admits that he made two complaints to Walden: (i) "don't touch me"; and (ii) "get me to the hospital."  MSJs 1 & 3 Response at 9.  He allows that the latter claim was arguably grievable, either as a "condition of care" under CD-150500D(d) or a medical health care decision under CD-150500D(a), and that he sought relief for this claim in the form of an injunction. MSJs 1 & 3 Response at 9.  Martinez asserts, however, that it was unclear that "'get me to the hospital' would be grievable under these circumstances . . . as the only reason Walden was contacted was to comply with security protocols [and] [o]therwise grievable medical decisions are not grievable if the medical decision is based on a security issue."  MSJs 1 & 3 Response at 9 (citing Grievances Policy § 150500 at 5).

Finally, Martinez asserts that it is the Defendants' burden to prove that the grievance system was available to him.  See MSJs 1 & 3 Response at 9 (citing Main v. Martin, 2009 WL 215404, at *6 (D. Colo., Jan. 22, 2009)(Miller, J.)).  Martinez argues that the Defendants have not proved that any specific remedy was available to him and remained available after he was taken to the hospital.  See MSJs 1 & 3 Response at 10.  He asserts that the evidence shows that

tort claims are "non-grievable" and that a number of courts have held that "non-grievable" complaints do not have to be exhausted -- especially where the corrections department has no control over the complaint.   MSJs 1 & 3 Response at 10-11 (citing Benning v. Georgia, 2010 WL 4000616, at *1 (M.D. Ga., Oct. 12, 2010)(Treadwell, J.)).   Martinez argues that the Defendants have adopted the New Mexico Correction's grievance policy and cannot contest that he has presented a tort claim.   See MSJs 1 & 3 Response at 11.   He concludes that the Defendants cannot argue that he was required to grieve the non-grievable tort claim or to formally appeal grievances that were resolved informally.   See MSJs 1 & 3 Response at 11. Last, Martinez states that he does not oppose the dismissal of his state law negligence claims against Walden, Corizon, Inc., and Armijo, because he acknowledges that they are not viable, but requests the Court to deny the Walden Motion and MSJ 3 as to his federal law claims under 42 U.S.C. § 1983.  See MSJs 1& 3 Response at 12-13.

    5.    **Walden's Reply.**

    Walden replied to Martinez' Response to the MSJ 1 and the MSJ 3 on May 7, 2015.  See MSJ 1 Reply.  Walden notes that Martinez did not dispute his status as a prisoner at all relevant times and, therefore, his obligation to comply with the PRLA.  See MSJ 1 Reply at 4.  Walden also notes that Martinez did not dispute that he did not file any grievances, informal or formal, regarding Walden's treatment of his ankle.  See MSJ 1 Reply at 4.  Walden asserts that the two arguments which Martinez brought instead -- that his complaint about Walden's decision to delay transport to the hospital was informally grieved and resolved, and that the only remaining complaint against Walden is for assault and battery, a tort -- lack merit.  See MSJ 1 Reply at 4.

Accordingly, Martinez maintains that he is entitled to summary judgment on all claims as a matter of law.  See MSJ 1 Reply at 4.

First, Walden asserts that "a mere difference of opinion between the prisoner/patient and prison medical authorities as to the course of treatment does not give rise to a § 1983 claim." MSJ 1 Reply at 5 (citing Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993)(Anderson, J.)). Walden also argues that a delay in treatment is not sufficient to establish a claim of substantial indifference.  See MSJ 1 Reply at 5 (citing Olson v. Stotts, 9 F.3d at 1477).   While Walden allows that the New Mexico Correction's grievance procedure encourages informal resolution of disputes, he asserts that the first step of the grievance procedure is to file an "Inmate Informal Complaint Form."  MSJ 1 Reply at 5 (citing Grievances Policy § 150501 at 1).  Further, Walden posits that his conception of Martinez' grievance concerns the prison's medical transport policy and asserts that, had Martinez used the grievance procedure, the New Mexico Corrections department would have been able to evaluate the policy and determine what remedy, if any, was appropriate.  See MSJ 1 Reply at 6.  Walden contends that Martinez is alleging that an "informal grievance" occurs every time a prisoner shouts something at prison staff -- even though the New Mexico Correction's grievance procedure does not contain this rule.  MSJ 1 Reply at 6.  Walden argues that, if this were the rule, prisoners would always be able to bypass the available administrative remedies through the prison system and "completely eviscerate the PLRA's requirement for exhaustion of administrative remedies."  MSJ 1 Reply at 6.  Accordingly, Walden asserts that Martinez failed to use the grievance procedure and to exhaust his

administrative remedies, which means that Walden is entitled to summary judgment.  See MSJ 1 Reply at 6-7.

Second, Walden asserts that Martinez' argument regarding his medical care at the Guadalupe Facility -- that Walden's reduction[35] of Martinez' broken ankle constituted assault and battery, and was not "treatment" -- is counterfactual.  MSJ 1 Reply at 7.  Walden contends that the United States Court of Appeals for the Sixth Circuit provided the "clearest" explanation of the applicability of the PLRA's exhaustion provision when it stated:

> A natural reading of the statute suggests that its application requires consideration of three simple questions.  First, is plaintiff "a prisoner confined in [a] jail, prison, or other correctional facility?"  If not, the statute is inapplicable.  If so, a second question must be considered: Is the plaintiff suing under § 1983 respecting "prison conditions?"  If not, the statute is inapplicable.  If so, a third question must be considered: Did plaintiff exhaust "such administrative remedies as [were] available" before plaintiff "brought" his action?  If question three is answered in the negative, plaintiff is in violation of the statute and the court is required to dismiss plaintiff's suit.

MSJ 1 Reply at 7 (quoting Cox v. Mayer, 332 F.3d 422, 424 (6th Cir. 2003)(Hood, J.)).  As it is undisputed that Martinez was a prisoner confined to a correctional facility at all relevant times and that he did not seek administrative remedies after Walden's reduction of his ankle fracture, Walden posits that only the second question is relevant to Martinez' MSJs 1 & 3 Response.  See MSJ 1 Reply at 7-8.  Walden asserts that Martinez' claims fall within the PLRA's scope of "prison conditions."  MSJ 1 Reply at 8.  He notes that the Supreme Court defined "prison

---

[35]Reduction in the medical context is defined as "the replacement or realignment of a body part in normal position or restoration of a bodily condition to normal."  Mediate, Medical Definition, Merriam-Webster Online Dictionary (2015).

conditions," as the PLRA uses that phrase, in <u>Porter v. Nussle</u>, 534 U.S. 516 (2002)(Ginsburg, J.), and stated that it is a broad term that makes the PLRA's exhaustion requirement apply "to **all inmate suits about prison life**, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." MSJ 1 Reply at 8 (quoting <u>Porter v. Nussle</u>, 534 U.S. at 532)(emphasis in MSJ 1 Reply). Walden further asserts that the Supreme Court in <u>Porter v. Nussle</u> rejected the argument which Martinez is attempting to make -- that his complaint is not about "prison conditions." MSJ 1 Reply at 8. Walden argues, therefore, that Martinez was required to use the grievance procedure and exhaust the available administrative remedies, and, because Martinez failed to exhaust, requests that the Court grant his motion for summary judgment. <u>See</u> MSJ 1 Reply at 9.

### 6. **Corizon, Inc. and Armijo's Reply.**

Corizon, Inc. and Armijo replied to Martinez' Response to the MSJ 1 and the MSJ 3 on May 18, 2015. <u>See</u> MSJ 3 Reply. Corizon, Inc. and Armijo first state that they "incorporate and adopt all arguments set forth in" the MSJ 1 Reply, and "the arguments contained within the GEO Defendant's Reply in Support of Motion for Summary Judgment [filed November 4, 2014 (Doc. 13)("State MSJ Reply")] under subheading C, appearing at pages 5-7."[36] Corizon, Inc. and

---

[36]This section of the State MSJ Reply argues that Martinez was required to exhaust the grievance policy in place at the Guadalupe Facility, even if the procedure had no chance of granting his requested relief. <u>See</u> State MSJ Reply at 5. Guadalupe County and the GEO group cite to <u>Booth v. Churner</u> for the proposition that, "as long as some form of relief is available through the applicable administrative grievance procedure, a prisoner must comply with the PLRA's exhaustion requirement." State MSJ Reply at 5 (citing <u>Booth v. Churner</u>, 532 U.S. at 731). They also argue that Martinez was not exempt from the exhaustion requirement simply on

Armijo make two arguments to refute Martinez' Response to the MSJ 1 and the MSJ 3. <u>See</u> MSJ 3 Reply at 2.

First, Corizon, Inc. and Armijo argue that the Court should find, as a matter of law, that Martinez failed to invoke any aspect of the New Mexico Correction's grievance process with respect to his medical care, and also adopt Walden's discussion of this fact in the MS1 Reply. <u>See</u> MSJ 3 Reply at 2 (citing MSJ 1 Reply at 2, 5-7). Further, they note that Martinez criticized the care he received beyond the initial decision to not transport him immediately to the hospital, because: (i) in the FAC's Count IV, Martinez criticizes the retention of Walden and Armijo; and (ii) in the FAC's Count V, Martinez raises constitutional supervisory liability claims against Armijo. <u>See</u> MSJ 3 Reply at 3. Corizon, Inc. and Armijo allege that it is undisputed that Martinez never initiated or exhausted his administrative remedies regarding these two claims or his claim regarding his medical care. <u>See</u> MSJ 3 Reply at 3. They argue that it does not matter if the Court accepts that Martinez' statements to Walden constituted an informal grievance, because Martinez' complaint is that he was not sent to the emergency room immediately for treatment but, when he went, "his sole purpose in going there was for the taking of **x-rays**, **not treatment**." MSJ 3 Reply at 3 (emphasis in MSJ 3 Reply). They also assert that, after being taken to the hospital, Martinez was "still dissatisfied with the medical care provided to him and

---

the basis that he sought monetary relief. <u>See</u> State MSJ Reply at 6. Further, they assert that Martinez did not have a "tort claim" until he filed this lawsuit, so his claim was grievable under the New Mexico Correction's policy, and that, if the Court follows his logic that it was not grievable, no incident which results in injury to an inmate would be grievable. State MSJ Reply at 6.

the running of the medical department, as a condition of his imprisonment," and thus he still had a grievable claim.  MSJ 3 Reply at 3.

Second, Corizon, Inc. and Armijo argue that, even if the New Mexico Correction's grievance process cannot award monetary damages, Martinez was complaining of "Prison Conditions," and thus his complaints constitute grievable offenses for which he had to exhaust the available administrative remedies before pursuing any federal claims.  MSJ 3 Reply at 4 (citing Booth v. Churner, 532 U.S. 731 *passim*; Jernigan v. Stuchell, 304 F. 3d 1030 *passim*; Porter v. Nussle, 534 U.S. at 532).  They also adopt by reference the discussion in the State MSJ Reply under subheading C, pages 5-7,[37] and Walden's discussion under heading B, pages 7-10, in the MSJ 1 Reply.[38]  See MSJ 3 Reply at 4.  Accordingly, Corizon, Inc. and Armijo assert that the Court must dismiss Martinez' claims against them, and ask the Court to grant their motion for summary judgment.  See MSJ 3 Reply at 4-5.

### 7. Martinez' Response to Guadalupe County and the GEO Group's Motion for Summary Judgment.

Martinez responded to the MSJ 2 on June 5, 2015.  See MSJ 2 Response at 1.  Martinez starts his response by reiterating that he was not incarcerated when he filed his complaint against Guadalupe County and the GEO Group on August 12, 2013, and that he is not asserting a § 1983 claim or any other claim under federal law against Guadalupe County and the GEO Group.  See MSJ 2 Response ¶¶ 1-3, at 2.  Martinez further states that he does not direct any of the FAC's

---

[37]See footnote 34, supra.

[38]See subheading 5.  MSJ 1 Reply at 35-36, supra.

allegations at Guadalupe County and the GEO Group, and the allegations cannot be construed in that way.  See MSJ 2 Response ¶ 4, at 2.

Martinez starts his argument acknowledging that he failed to file a tort claim notice as the NMTCA requires, and thus consents to the dismissal of his tort claims against Guadalupe County.  See MSJ 2 Response at 3.  Martinez next asserts that "[e]x-prisoners are not prisoners" and that the PLRA does not apply to lawsuits filed after a prisoner's release, because that person is no longer a "prisoner" for purposes of the statute.  MSJ 2 Response at 4 (citing Norton v. The City of Marietta, OK, 432 F.3d 1145, 1150 (10th Cir. 2005)(per curium)).  He states that the Tenth Circuit has held that the plaintiff's status at the time of filing suit determines whether or not the PLRA's exhaustion provision applies to the lawsuit, so the PLRA does not apply to a plaintiff bringing suit about prison life after his release.  See MSJ 2 Response at 4 (citing Norton v. The City of Marietta, OK, 432 F.3d at 1150).  Martinez therefore asserts that, because he was not "incarcerated or detained in any facility [and] accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program," the PLRA does not apply to this case.  MSJ 2 Response at 4 (quoting 42 U.S.C. § 1997e(h)).  He also argues that, because the FAC added no counts against Guadalupe County or the GEO Group but merely added more Defendants to the case, the applicable time period for PLSA considerations was when he filed his original Complaint.  See MSJ 2 Response at 4.

Second, Martinez argues that Booth v. Churner does not stand for the proposition that a plaintiff must complete the grievance process regardless whether he seeks injunctive or monetary

relief -- as Guadalupe County and the GEO Group allege.  See MSJ 2 Response at 4-5 (citing 532 U.S. 731 *passim*).  He argues that the dispute in Booth v. Churner was "whether or not a remedial scheme is 'available' where, as in Pennsylvania, **the administrative process has authority to take some action in response to a complaint, but not the remedial action an inmate demands to the exclusion of all other forms of redress**."  MSJ 2 Response at 5 (quoting 532 U.S. at 736)(emphasis in MSJ 2 Response).  Accordingly, Martinez asserts that Booth v. Churner stands for the proposition that an inmate must exhaust the grievance process only if "the system has authority to take **some** responsive action with respect to the inmate's allegations."  MSJ 2 Response at 6 (emphasis in MSJ 2 Response).  Martinez posits that the New Mexico Correction's administrative procedure lacked authority to provide any relief, because his tort claim was not grievable and money damages for personal injury was not an available remedy, rendering Booth v. Churner inapplicable in this case.  See MSJ 2 Response at 6.

Next, Martinez maintains that no aspect of his medical claim was addressed towards Guadalupe County and the GEO Group, so there is no need to address the issue of exhaustion with respect to this claim again, because it was addressed in MSJs 1 & 3 Response.  See MSJ 2 Response at 6.  Martinez then asserts that he completed the appeal portion of the New Mexico Correction's policy by giving his appeal documentation to the Grievance Officer.  See MSJ 2 Response at 6.  He argues that he has never testified to the contrary, so Guadalupe County and the GEO Group cannot characterize his affidavit as a sham; he asserts that his response in the State MSJ Response to which they point is a legal, and not a factual, argument.  See MSJ 2 Response at 6 (citing State MSJ Response ¶ 7, at 2).  Martinez further asserts that his position

has support despite that he does not have a copy of his appeal, because he has his grievance paperwork.  See MSJ 2 Response at 6.  He also posits that the Grievance Lieutenant's evidence to the contrary is not substantial and argues that there is a question of fact regarding whether those administering the policy are completely accurate in their record-keeping; Martinez maintains his informal complaint was not filed late and that he never received a response, which he asserts is "a routine occurrence."  MSJ 2 Response at 7.

Finally, Martinez argues that Guadalupe County and the GEO Group are judicially estopped from arguing the incident was not a tort claim, because they prevailed on their position that the NMTCA applies to this case.  See MSJ 2 Response at 7.  He maintains that the New Mexico Correction's policy's plain language states that tort claims are not grievable, and notes that Guadalupe County and the GEO Group agree that tort claims are not grievable.  See MSJ 2 Response at 7.  Martinez contends that Guadalupe County and the GEO Group's positon is "incoherent," because they argue that he did not have a "tort claim" when he was required to file a grievance and assert that this time period was also when he needed to file a tort claim notice with Guadalupe County.  MSJ 2 Response at 8.  Martinez further asserts that his grievance was "clearly for the damage to his ankle" and not for the gym floor's condition, and identified two conditions of negligence, which he asserts mirrors his complaint and also "happens to be the exact information that would be required in a tort claims notice."  MSJ 2 Response at 8.  Martinez argues that monetary damages for personal injury are not an available remedy under the New Mexico Correction's policy, which is another reason tort claims are not grievable, and that it is insignificant that the Grievance Lieutenant accepted an ungrievable claim.  See MSJ 2

Response at 8.  Martinez again asserts that the Defendants have the burden to prove that the grievance system was available to him -- in this case, through the completion of an appeal.  See MSJ 2 Response at 8 (citing Main v. Martin, 2009 WL 215404, at *6).  Martinez argues that the Defendants have not proved that some other, specific remedy was available, and he maintains that the policy states that tort claims are "non-grievable."  MSJ 2 Response at 9.  Martinez again posits that a number of courts have held that "non-grievable" complaints do not have to be exhausted.  MSJ 2 Response at 9.  Accordingly, Martinez requests that the Court deny Guadalupe County and the GEO Group's motion for summary judgment.  See MSJ 2 Response at 11.

### 8. Guadalupe County and the GEO Group's Reply.

Guadalupe County and the GEO Group replied to Martinez' Response to the MSJ 2 on June 18, 2015.  See MSJ 2 Reply.  They first ask the Court to dismiss Guadalupe County from this lawsuit, because of Martinez' admitted failure to file the required tort claim notice and his consent to the dismissal of his single state law negligence claim against it.  See MSJ 2 Reply at 1 (citing N.M. Stat. Ann. § 41-4-16).  They then state that the only remaining issue which the Court must resolve, with respect to these particular Defendants, is whether Martinez was required to exhaust and failed to exhaust his administrative remedies under N.M. Stat. Ann. § 33-2-11(B) before filing his state law negligence claim against the GEO Group.  See MSJ 2 Reply at 2.

Guadalupe County and the GEO Group first assert that N.M. Stat. Ann. § 33-2-11(B) states:

> No court of this state shall acquire have subject-matter jurisdiction over **any complaint, petition, grievance or civil action filed by any inmate of the corrections department** with regard to any cause of action pursuant to state law that is substantially related to the inmate's incarceration by the corrections department until the inmate exhausts the corrections department's internal grievance procedure.

MSJ 2 Reply at 3 (quoting N.M. Stat. Ann. § 33-2-11(B)).  They argue that Martinez ignores the New Mexico statute's plain language in arguing that his status as an inmate at the time he filed the FAC is of no effect, because the statute is clear that the exhaustion requirement applies to "any complaint."  MSJ 2 Reply at 4 (quoting N.M. Stat. Ann. § 33-2-11(B)).  As statutes should generally be interpreted to "give each word some operative effect," Walters v. Metropolitan Educational Enterprises, Inc., 519 U.S. 202 (1997)(Scalia, J.), Guadalupe County and the GEO Group contend that Martinez' construction of the statute renders the phrase "civil action" meaningless.  MSJ 2 Reply at 4 (quoting Walters v. Metropolitan Educ. Enterp., Inc., 519 U.S. at 209).  They note that Martinez does not address the New Mexico statute's language or the case law they cite in the MSJ 2 for the proposition that an amended complaint supersedes the original. See MSJ 2 Reply at 5 (citing Rhodes v. Robinson, 621 F.3d at 1005).  Guadalupe County and the GEO Group argue that the idea that an amended complaint supersedes the original complaint is consistent with the language contained in N.M. Stat. Ann. § 33-2-11(B).  See MSJ 2 Reply at 6.

Guadalupe County and the GEO Group next assert that their undisputed facts establish that Martinez did not file an appeal to the Secretary of Corrections and thus failed to fully exhaust his administrative remedies as N.M. Stat. Ann. § 33-2-11(B) requires.  See MSJ 2 Reply at 6.  They argue that, because Martinez failed to provide evidence supporting his denials, the

Court must accept their undisputed facts establishing the GEO Group's standard practice of processing, recording, and tracking the inmates' grievances and appeals, which establish that Martinez did not file an appeal. See MSJ 2 Reply at 7 (citing Fed. R. Civ. P. 56(c); D.N.M.LR-Civ. 56.1(b)). They assert that Martinez' affidavit is insufficient to create a question of fact, because Martinez cannot meet his burden to overcome the evidence that Guadalupe County and the GEO Group present. See MSJ 2 Reply at 7 (citing Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)(Seymour, J.)). Accordingly, Guadalupe County and the GEO Group ask the Court to conclude as a matter of law that Martinez failed to file an appeal and thus failed to exhaust his administrative remedies. See MSJ 2 Reply at 7.

Finally, Guadalupe County and the GEO Group argue that Martinez' assertion that his grievance regarding the gym floor amounted to a "tort claim" demonstrates that his reading of the New Mexico Correction's Grievance Policy is too narrow. MSJ 2 Reply at 7-8. Guadalupe County and the GEO Group maintain that the policy clearly states that the application of prison policies, rules, and procedures, including, but not limited to, medical care and matters relating to conditions of inmate care or supervision within the New Mexico Correction's authority or its contractors' authority are grievable. See MSJ 2 Reply at 8 (citing Grievances Policy § 150500, at 5-6). They assert the condition of the gym floor at the Guadalupe Facility obviously involves a matter relating to the conditions of inmate care or supervision within the authority of New Mexico Corrections or its contractors, making this claim grievable. See MSJ 2 Reply at 8. They also argue that the fact that tort claims and monetary damages for personal injuries are not pursuable through the grievance process does not render the process meaningless or futile, or

preclude or excuse Martinez from pursuing an inmate grievance regarding the gym floor's condition. See MSJ 2 Reply at 8-9 (citing Booth v. Churner, 532 U.S. at 733). Finally, Guadalupe County and the GEO Group assert that the NMTCA supports the proposition that a "tort claim" is something only a court can adjudicate, thus making it distinct from a grievance about prison conditions, so they posit that Martinez' argument -- that it is inconsistent that they state his grievance about the gym floor's condition is not a "tort claim" but that he was required to file a tort claim notice against Guadalupe County -- is unconvincing. MSJ 2 Reply at 9. Accordingly, they again ask the Court grant their motion for summary judgment. See MSJ 2 Reply at 10.

**9.    The Hearing.**

The Court held a hearing on June 23, 2015. See Transcript of Hearing (taken June 23, 2015)("Tr.").[39]  The Court proposed that, rather than arguing one motion at a time, all counsel speak to the exhaustion issue, and then move to Guadalupe County and the GEO Group's failure-to-file-a-tort-claim issue. See Tr. at 2:11-16 (Court). Walden's counsel agreed, and allowed Corizon, Inc. and Armijo's counsel to take the lead. See Tr. at 2:22-24 (Charlebois). The Defendants argued that there is no question that Martinez did not file a written informal grievance and questioned Martinez' argument that being taken to the emergency room somehow remedied that. See Tr. at 3:13-17 (Weiss). They also rejected Martinez' second argument that

_____

[39]The Court's citations to the transcript for this hearing refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

the fact that he is seeking money damages makes his complaint non-grievable, asserting that the Supreme Court decision addressed both this argument and his argument for not filing a written informal grievance in <u>Booth v. Churner</u>.  <u>See</u> Tr. at 3:17-23 (Weiss).  The Defendants stated that they believe the <u>Booth v. Churner</u> case is dispositive, but noted that <u>Ross v. County of Bernalillo</u> answered any leftover questions.  <u>See</u> Tr. at 4:1-5 (Weiss).  They asserted that <u>Booth v. Churner</u> held that, if there is any potential relief available, an inmate must exhaust the administrative remedies through the grievance process, and that Martinez never even began the grievance process.  <u>See</u> Tr. at 4:10-17 (Weiss).  The Defendants argued that it does not matter for what the inmate asks, but, rather, the question is whether there is any relief available through the grievance process.  <u>See</u> Tr. at 5:23-23 (Weiss); <u>id.</u> at 6:1 (Weiss).  They noted that they are arguing as only to the federal claim, because Martinez conceded dismissal of the state law claims against Walden, Corizon, Inc., and Armijo.  <u>See</u> Tr. at 6:7-11 (Weiss).

Guadalupe County and the GEO Group then asserted that the Court should address three issues relevant to them: (i) whether N.M. Stat. Ann. § 33-2-11(B) applies, because Martinez was not incarcerated when he filed his Complaint but was incarcerated when he filed his FAC; (ii) whether Martinez appealed the grievance he filed regarding the gym floor's condition; and (iii) whether Martinez' claim is a tort claim that is somehow exempt from the grievance process.  <u>See</u> Tr. at 9:10-23 (Allen).  They argued that Martinez' grievance was a complaint about the gym floor's condition and not a tort claim -- and thus grievable under the New Mexico Correction's policy.  <u>See</u> Tr. at 10:14-25 (Allen).  They asserted that only courts could decide tort claims.  <u>See</u> Tr. at 11:1-2 (Allen).  The Court then questioned the logic of the New Mexico Corrections

having a grievance policy that excludes tort claims when it will later say that it wants "a tort claim to be grieved in the state system even though it may end up being a tort claim."  Tr. at 11:8-13 (Court).  Guadalupe County and the GEO Group posited that the grievance process can provide remedies to the inmates, but that the process is not a court and is not intended to award monetary damages for personal injuries.  See Tr. at 11:16-22 (Allen).  They argue that, because the grievance process could have given relief with respect to Martinez' complaint, Martinez had an obligation to grieve that complaint.  See Tr. at 12:4 (Allen).

The Court stated, however, that the exception for tort claims and the apparent requirement to grieve everything makes it confusing for inmates.  See Tr. at 12:5-10 (Court). Guadalupe County and the GEO Group responded that in this case it was not confusing, because Martinez filed his grievance and the GEO officials accepted the grievance for consideration.  See Tr. at 12:17-24 (Allen).  They further urged the Court to examine the context within which "tort claims" is used within the policy, because the policy reads: "Things are not grievable if they're not matters [] within the control of the corrections department, including tort claims."  Tr. at 13:4-10 (Allen).  They argued that the New Mexico Corrections is not a tribunal that can award damages for torts, but, because it can provide relief, the inmate has to exhaust the grievance process as long as this process is available and is not futile.  See Tr. at 13:11-20 (Allen).  They posited that the purpose for the exclusion is to prevent inmates from being able to use the grievance process instead of going to court.  See Tr. at 17:1-3 (Allen).  Guadalupe County and the GEO Group then argued that, while the court had subject matter jurisdiction over Martinez' original Complaint because he was not incarcerated at the time of filing, that Martinez was

incarcerated at the time of filing his FAC made his failure to exhaust fatal to his sole claim against them.  See Tr. at 18:15-21 (Allen).

The Court noted that Guadalupe County and the GEO Group did not really receive an amended complaint, as the FAC did not change the original Complaint's allegations against them.  See Tr. at 19:9-10 (Court); id. at 10:17-18 (Court).  The Court also maintained that, once a court gets jurisdiction, it keeps jurisdiction and that N.M. Stat. Ann. § 33-2-11 does not really seem to allow for a court to lose jurisdiction, because it only states when a court will get jurisdiction.  See Tr. at 22:1-10 (Court).  Further, the Court posited that the statute could mean that there is jurisdiction over the original Complaint but the additional claims raised in the FAC are the ones that Martinez has to exhaust before the Court has jurisdiction over those.  See Tr. at 23:18-24 (Court).  Guadalupe County and the GEO Group maintained, however, that, if the subject-matter jurisdiction from the Complaint continued when Martinez filed the FAC, then the phrase "civil action" in the statute is redundant and unnecessary.  Tr. at 24:8-25 (Allen).  See 25:1-4 (Allen).  They then asked the Court to find Martinez' affidavit to be a sham, because Martinez' statement that he filed an appeal was contrary to his admissions in earlier pleadings.  See Tr. at 25:12-20 (Allen).  The Court stated its concern, however, that, because they did not dispute the fact in the briefing stage, it would be unjust to hold that a party has conceded a fact or is prevented from later denying that fact.  See Tr. at 28:13-18 (Court).  Guadalupe County and the GEO Group argued that Martinez' statement in his affidavit that he filed an appeal is not enough and that courts have held that the plaintiff must give more than just the generalized statement that "I turned it in, and they must have lost it."  Tr. at 32:1-6 (Allen).  They also noted

that Martinez is very precise in his affidavit about the dates that he filed other things, but that there is no statement in the affidavit as to when he filed the appeal.  See Tr. at 32:7-13 (Allen). They argue that Martinez' failure to provide the date on which he allegedly filed the appeal or a copy of the appeal is fatal to his allegation.  See Tr. at 32:12-13 (Allen); id. at 32:16-18 (Allen).

Martinez posited, however, that there is a specific time reference in his affidavit when he filed his appeal, as he stated: "Upon receipt of the denial I hand carried the grievance paperwork to Jessica Vigil to file the step 5 appeal to the Corrections Department in Santa Fe."  Tr. at 35:5-12 (O'Brien)(quoting Martinez Aff. ¶ 8, at 2).  Further, he argued that he did not previously admit that he did not file an appeal as Guadalupe County and the GEO Group allege, but, rather, that he admitted that "upon information and belief," and, more specifically, for the purposes of the motion in question, because it was purely a legal argument.  Tr. at 36:7-12 (O'Brien).  He also asserted that his claim against Guadalupe County and the GEO Group is not based on prison conditions or any federal claim, but is purely a tort claim.  See Tr. at 39:1-6 (O'Brien).  The Court stated, however, that it seemed like Martinez' grievance is just "a normal prison grievance."  Tr. at 40:1-4 (Court).  Martinez asserted that in his grievance, he identified negligence on the part of the people working on the gym floor and that this negligence caused him personal injury, so it is not a normal prison grievance like the Court posited.  See Tr. at 40:9-15 (O'Brien).  He further alleged that Booth v. Churner stands for the proposition that exhaustion is not required where the relevant administrative procedure lacks the authority to provide any relief and that it is distinguishable, because Martinez was seeking only monetary damages and

not injunctive relief as well, as the plaintiff did in <u>Booth v. Churner</u>.  <u>See</u> Tr. at 41:19-25 (O'Brien); <u>id.</u> at 42:1-3 (O'Brien).

Next, Martinez alleged that the state court got jurisdiction over the Complaint when Martinez filed it, because he was not incarcerated, and did not lose this jurisdiction when he filed the FAC.  <u>See</u> Tr. at 46:7-12 (O'Brien).  He conceded, however, that there is not much law on this issue.  <u>See</u> Tr. at 47:4-5 (O'Brien).  He further argued, however, that the information in his affidavit is sufficient to create a question of fact, especially because the Grievance Officer does not discuss any personal knowledge about what Martinez did.  <u>See</u> Tr. at 48:6-15 (O'Brien). Martinez then argued that the requirement for a written, informal complaint is the second step of the grievance process and that resolving the grievance informally, through discussion, is the first step.  <u>See</u> Tr. at 49:4-16 (O'Brien).  He argued that, even if a written, informal complaint was a requirement, there is no question that he attempted to resolve the issue informally with Walden. <u>See</u> Tr. at 49:21-25 (O'Brien).  Martinez asserts that, because he was taken to the hospital, he prevailed, and it would have been frivolous to then file a written, informal grievance complaining that he was not taken to the hospital.  <u>See</u> Tr. at 50:2-17 (O'Brien).

The Court then asked, given that Martinez was taken to the hospital, what Martinez is alleging Walden should have done.  <u>See</u> Tr. at 51:4-9 (Court).  Martinez noted that Walden made Martinez wait, in severe pain and without pain medication, while "the sole of [Walden's] shoe was right up against [Martinez'] calf" -- which alone is actionable under § 1983.  Tr. at 51:13-25 (O'Brien).  Martinez argues that Walden performing a closed reduction of the ankle without anesthesia, while Martinez was "screaming in pain," is torture -- especially where there is an

- 53 -

emergency room a mile and a half down the road.  Tr. at 52:6-14 (O'Brien).  Martinez further asserted that this claim against Walden is a tort claim and any possible injunctive relief would have been to get him to the hospital, which was done.  See Tr. at 53:9-16 (O'Brien).

Corizon, Inc. and Armijo then argued that it does not matter for what relief Martinez was asking for and if he did not get that relief, because the Supreme Court stated that the Court must determine if the grievance process could provide relief to the plaintiff.  See Tr. at 54:17-23 (Weiss).  They asserted that the grievance process could have provided a number of remedies to Martinez and that the question is whether Martinez exhausted his administrative remedies regarding anything available related to his complaint.  See Tr. at 55:3-22 (Weiss).  They argued that what matters here is not that Martinez was taken to the hospital, but whether some more relief was available to him at the time.  See Tr. at 56:14-20 (Weiss).  Corizon, Inc. and Armijo asserted that, after being taken to the hospital, Martinez could have requested that Walden be removed from the facility; therefore, there was still relief available to him.  See Tr. at 57:17-20 (Weiss).  They argued that Martinez could have grieved that Walden assaulted him and that the administrative process would have had the authority to take some action with regards to this grievance.  See Tr. at 58:11-23 (Weiss).

The Court then asked "what's the incentive to file a grievance if you've gotten everything you want."  Tr. at 62:7-9 (Court).  Corizon, Inc. and Armijo responded that the Supreme Court answered that question, and held that requiring exhaustion would provide administrative results which would satisfy some inmates and mollify their passions.  See Tr. at 62:14-20 (Weiss).  They posit that, if Martinez had gone through the grievance process, he would have been heard,

he may have been given relief, and that relief may have been enough for him, which would have prevented the litigation.  See Tr. at 63:8-19 (Weiss).

The Court then asked Guadalupe County and the GEO Group what they thought about Martinez' assertion that his affidavit states he brought his appeal the same day he received the denial of his grievance.  See Tr. at 64:6-12 (Court).  Guadalupe County and the GEO Group posited that the information in the affidavit does not show when Martinez filed the appeal, because there is no time frame attached to "upon receipt" and that dates are a huge part of complying with the grievance process.  Tr. at 64:13-16 (Allen).  See Tr. at 65:1-3 (Allen). Walden then argued that there is no question that Martinez understood the grievance process, because he filed a grievance with regard to the gym floor, and he did not file an informal complaint regarding his claim against Walden.  See Tr. at 67:1-12 (Charlebois).  Further, he asserted that, if screaming or yelling were an acceptable way to grieve, the entire grievance process would collapse, and that it is inaccurate for Martinez to state that he got the relief he wanted.  See Tr. at 67:12-22 (Charlebois).

Martinez responded that it seems like there are innumerable possibilities for relief and, thus, an inmate could never exhaust his remedies.  See Tr. at 69:19-21 (O'Brien).  He noted that, in Ross v. County of Bernalillo, within the bounds of the grievance procedure, the plaintiff obtained the relief he sought, as did Martinez.  See Tr. at 71:21-25 (O'Brien).  Martinez states that, as the Tenth Circuit in Ross v. County of Bernalillo concluded, the plaintiff had no legal requirement to complete and exhaust the grievance procedure, because he obtained relief, and that reasoning should apply here.  See Tr. at 72:1-3 (O'Brien).

- 55 -

Finally, Guadalupe County and the GEO Group asserted that Guadalupe County is entitled to summary judgment, because Martinez did not file a tort claim notice, which is necessary under the NMTCA, and posited that Martinez withdrew his claim against Guadalupe County in his response.  See Tr. at 74:7-16 (Allen).  The Court then stated that, if it grants Walden's, Corizon, Inc.'s, and Armijo's motions for summary judgment, it would probably not reach any of the state law issues and thus remand the case to the state court.  See Tr. at 75:19-23 (Court).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the **moving** party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."  Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)

(emphasis in original).[40]  Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at

---

[40]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

- 57 -

256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v.

United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained

in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried."  (citation omitted)(internal quotation marks omitted)).  Nor can a party "avoid

summary judgment by repeating conclusory opinions, allegations unsupported by specific facts,

or speculation."  Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at

*1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc.,

452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).  "In responding to a motion for

summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion

and may not escape summary judgment in the mere hope that something will turn up at trial.'"

Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d

789, 794 (10th Cir. 1988)).

        To deny a motion for summary judgment, genuine factual issues must exist that "can be

resolved only by a finder of fact because they may reasonably be resolved in favor of either

party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will

not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v.

Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the

fact finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448

(1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was

appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts.

550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304

(10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott [v. Harris], 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (brackets omitted).  "The Tenth Circuit, in Rhoads

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[41]] explained that the

blatant contradictions of the record must be supported by more than other witnesses'

testimony[.]"  Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning,

J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we
> take the facts "in the light most favorable to the party asserting the injury."  Scott
> v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the
> plaintiff's version of the facts," id. at 378, unless that version "is so utterly
> discredited by the record that no reasonable jury could have believed him," id.
> at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that
> completely contradicted his version of the events.  550 U.S. at 379.  Here, there is
> no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads'
> testimony. There is only other witnesses' testimony to oppose his version of the
> facts, and our judicial system leaves credibility determinations to the jury. And
> given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory
> problems go to the weight of his testimony, not its admissibility . . . .  Mr. Rhoads
> alleges that his injuries resulted from a beating rendered without resistance or
> provocation. If believed by the jury, the events he describes are sufficient to

---

[41]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished
opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R.
32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive
value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its
> disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court
finds that Rhoads v. Miller, and Muller v. Culbertson, 408 F. App'x 194 (10th Cir. 2011), have
persuasive value with respect to material issues, and will assist the Court in its preparation of this
Memorandum Opinion and Amended Order.

support a claim of violation of clearly established law under Graham v. Connor,
490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).  See Lymon v.

Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).

In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes,

United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal

question of qualified immunity and "determine whether plaintiff's factual allegations are

sufficiently grounded in the record such that they may permissibly comprise the universe of facts

that will serve as the foundation for answering the legal question before the court," before

inquiring into whether there are genuine issues of material fact for resolution by the jury.  584

F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir.

1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are

irrelevant to the qualified immunity analysis because that analysis assumes the validity of the

plaintiffs' facts").

## LAW REGARDING EXHAUSTION OF REMEDIES UNDER THE PLRA

The PLRA states, in pertinent part: "No action shall be brought with respect to prison

conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are available

are exhausted."  42 U.S.C. § 1997e(a).  "'The PLRA's exhaustion requirement applies to all

inmate suits about prison life, whether they involve general circumstances or particular episodes,

and whether they allege excessive force or some other wrong.'"  Sanders v. Williams, No. CIV

08-0895 JB/WPL, 2010 WL 1631767, at *7 (D.N.M. March 20, 2010)(Browning, J.)(quoting

Porter v. Nussle, 534 U.S. 516, 532 (2002)).

> Once within the discretion of the district court, exhaustion in cases covered by §
> 1997e(a) is now mandatory.  All available remedies must now be exhausted; those
> remedies need not meet federal standards, nor must they be plain, speedy, and
> effective.   Even when the prisoner seeks relief not available in grievance
> proceedings, notably money damages, exhaustion is a prerequisite to suit.  And
> unlike the previous provision, which encompassed only § 1983 suits, exhaustion
> is now required for all action[s] . . . brought with respect to prison conditions,
> whether under § 1983 or any other Federal law.

Porter v. Nussle, 534 U.S. at 524 (citations omitted)(internal quotation marks omitted).  Congress

enacted the exhaustion provisions, intending

> to reduce the quantity and improve the quality of prisoner suits. . . .  Congress
> afforded corrections officials time and opportunity to address complaints
> internally before allowing the initiation of a federal case.  In some instances,
> corrective action taken in response to an inmate's grievance might improve prison
> administration and satisfy the inmate, thereby obviating the need for litigation.  In
> other instances, the internal review might filter out some frivolous claims.  And
> for cases ultimately brought to court, adjudication could be facilitated by an
> administrative record that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. at 524-25.   A prisoner may not satisfy the PLRA's exhaustion

requirements "by filing an untimely or otherwise procedurally defective administrative grievance

or appeal."   Woodford v. Ngo, 548 U.S. 81, 83-84 (2006).   "[E]xhaustion requirements are

designed to . . . give the agency a fair and full opportunity to adjudicate their claims."   Woodford

v. Ngo, 548 U.S. at 90.   "[P]roper exhaustion of administrative remedies . . . means using all

steps that the agency holds out, and doing so properly (so that the agency addresses the issues on

the merits)."   Woodford v. Ngo, 548 U.S. at 90 (internal quotation marks omitted).   Requiring

proper exhaustion

gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors.  This is particularly important in relation to state corrections systems because it is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons.

Woodford v. Ngo, 548 U.S at 94 (internal quotation marks omitted).

The nature and extent of information an inmate must provide in his administrative grievance to satisfy the PLRA's exhaustion requirement depends upon what the state's administrative system requires.  The Supreme Court in Porter v. Nussle made it clear that what is required for an inmate to exhaust prison-grievance proceedings is not the same as the "[p]roof requirements once a case is in court," such as "what injury . . . a plaintiff [must] allege and show; [and] what mental state . . . a plaintiff [must] plead and prove."  Porter v. Nussle, 534 U.S. at 529.  In its most recent analysis of exhaustion of prison remedies, see Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court made several holdings.  First, it held that an inmate does not have "to allege and demonstrate exhaustion in his complaint."  549 U.S. at 203.  The Supreme Court also held that courts should not "permit suit only against defendants who were identified by the prisoner in his grievance" unless the state's prison grievance procedure requires the inmate to provide that information.  549 U.S. at 203.  The Supreme Court further held that, if "the prisoner fails to satisfy the exhaustion requirement as to any single claim in his complaint," the court should dismiss only the unexhausted claims instead of "the entire action."  Jones v. Bock, 549 U.S. at 203.

In addressing "the level of detail required in a grievance to put the prison and individual officials on notice of the claim," the Supreme Court held that "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. Because the prison's grievance procedures in Jones v. Bock made "no mention of naming particular officials," the Supreme Court held that "the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted." 549 U.S. at 218.

Thus, it is now clear that "'the rules [for exhaustion] come from the prison grievance systems themselves -- state law for state prisons, federal administrative law for federal prisons.'" Kikumura v. Osagie, 461 F.3d 1269, 1282 (10th Cir. 2006)(quoting Strong v. David, 297 F.3d 646, 649 (7th Cir. 2003)(holding that "grievances must contain the sort of information that the administrative system requires"), overruled in part on other grounds by Bell Atlantic v. Twombly, 550 U.S. 544, 563 (2007)). As long as an inmate timely submits all the information in his grievance that the prison requires, "a grievance will satisfy [the PLRA's] exhaustion requirement so long as it is not so vague as to preclude prison officials from taking appropriate measures to resolve the complaint internally." Kikumura v. Osagie, 461 F.3d at 1283 (internal quotation marks omitted). Applying both Jones v. Bock and Kikumura v. Osagie, the Tenth Circuit has held:

> Identifying the exact steps a prisoner must take to exhaust administrative remedies presents "a choice-of-law issue," derived from the requirements of "the prison grievance systems themselves." Kikumura v. Osagie, 461 F.3d 1269, 1282

> (10th Cir. 2006)(quotations omitted); see also Jones v. Bock, 549 U.S. 199, . . . (2007)("[I]t is the prison's requirements . . . that define the boundaries of proper exhaustion.").
>
> PLRA exhaustion is an affirmative defense.  See Jones, 127 [U.S.] at [215].  We follow our usual practice with respect to affirmative defenses, and address only those arguments related to exhaustion that have been raised by defendants.  See Freeman v. Watkins, 479 F.3d 1257, 1259-60 (10th Cir. 2007).

Howard v. Waide, 534 F.3d 1227, 1243-44 (10th Cir. 2008).  "[T]he burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."

Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir.2007).

In determining what details a grievance had to bring to the prison's attention to exhaust an inmate's Eighth Amendment claim for deliberate indifference, the Tenth Circuit rejected the Defendants' contention in Howard v. Waide that the inmate's

> "claim" for deliberate indifference is unexhausted because he did not request monetary damages during the grievance process. . . .  "[O]ne exhausts processes, not forms of relief."  Booth v. Churner, 532 U.S. 731, 739 . . . (2001).  Moreover, monetary damages are not available through the CDOC grievance process.  See Colo. Dep't of Corr. Reg. 850-04 § III(F)(providing that "damages for pain and suffering, and exemplary or punitive damages are not remedies available to offenders").  PLRA does not require a prisoner who otherwise complies with the grievance process to add a futile request for a remedy that is, by the prison's own terms, unavailable.

Howard v. Waide, 534 F.3d at 1244 (holding that an inmate had sufficiently exhausted his administrative remedies on his Eighth Amendment claim for deliberate indifference by filing and pursuing a grievance warning "prison officials that the 2-11 Crew presented a risk to Howard's personal safety so long as he remained in the East side of Sterling," but holding that he had not

exhausted remedies for separate events that occurred later, and for which he did not file a grievance).

Thus, the PLRA requires a prisoner seeking only money damages through a lawsuit brought under federal law to "complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money" before filing suit. Booth v. Churner, 532 U.S. at 734. "[E]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administration remedies available." Patel v. Fleming, 415 F.3d 1105, 109 (10th Cir. 2005)(citing Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)). Once the inmate has exhausted the administrative process on the relief the prison can give, the inmate has satisfied the exhaustion requirement for his prison conditions claim. See Ross v. Cty. of Bernalillo, 365 F.3d 1181, 1187 (10th Cir. 2004)(holding that, because prison "was unable to do anything more in response to" the inmate's complaint, because neither "money damages or any other retrospective relief was available through the prison's grievance process," the inmate "was required to do no more in order to exhaust his administrative remedies with respect to his dangerous conditions of confinement claims," but also concluding that inmate had failed to grieve from alleged denials of medical treatment occurring after the date of first grievance, so those claims were not exhausted), overruled on other grounds in part by Jones v. Bock, 549 U.S. at 199.

## LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal

courts "possess only that power authorized by [the] Constitution and statute . . . ." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.

### 1.      Supplemental Jurisdiction.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."   Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines -- pendent and ancillary jurisdiction.[42]  Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims . . . derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties, whose insertion into the litigation does not have the support of any independent grounds for federal jurisdiction, when those parties

---

[42]The Tenth Circuit has noted that Congress' intent in passing 28 U.S.C. § 1367 was to supersede the common-law doctrine of pendent jurisdiction: "Effective December 1, 1990, Congress enacted legislation, codified at 28 U.S.C. § 1367 (1976 & Supp. 1992), which supersedes the common law pendent jurisdiction doctrine."  Baker v. Bd. of Regents of State of Kan., 991 F.2d 628, 634 (10th Cir. 1993)(citing Whalen v. Carter, 954 F.2d 1087, 1097 (5th Cir. 1992), Aschinger v. Columbus Showcase Co., 934 F.2d 1402 (6th Cir. 1991)).

share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, Chief Justice William H. Rehnquist created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. CIV 09-0540 JB/CG, 2011 WL 6013547, at * 5 (D.N.M. November 21, 2011)(Browning, J.)(citing 16 Moore's Federal Practice, § 106.04[5] (Matthew Bender 3d ed.)).  In response to the Committee's findings regarding pendent and ancillary jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence." Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

### 2.     District Court Discretion.

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing

City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.  Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity . . . ."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir.1998)("[S]ection 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994) ("The statute plainly allows the district court to reject jurisdiction over supplemental

claims only in the four instances described therein."); Executive Software N. Am. v. U.S. Dist. Court, 24 F. 3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."), overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c) . . . .")(emphasis in original); Bonadeo v. Lujan, No. CIV 08–0812 JB/ACT, 2009 WL 1324119, at *8 (D.N.M. April 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists.").  At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion.  See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(Crow, J.)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

The Tenth Circuit has held that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)).  The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726.  The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies.  See Armijo v. New Mexico, No. CIV 08-0336, 2009 WL 3672828, at *4 (D.N.M. September 30, 2009)(Browning, J.)("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").  The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction[.]'"  Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished).

## ANALYSIS

The Court will grant in part the Walden Motion and the MSJ 3.  The Court will grant summary judgment in part -- on Martinez' federal claims against Walden, Corizon, Inc., and Armijo -- and will dismiss these federal claims without prejudice.  The Court will leave it for the state court to decide whether Walden, Corizon, Inc., and Armijo are entitled to summary judgment on Martinez' state law claims.  Further, the Court will leave the MSJ 2 for the state court to decide.  Because no federal claims remain before the Court and because Walden removed this case from state court, the Court remands Martinez' case and remaining state law claims to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

I.    **BECAUSE MARTINEZ WAS INCARCERATED AT THE TIME HE FILED HIS FAC AGAINST DEFENDANTS WALDEN, CORIZON, INC., AND ARMIJO, THE PLRA APPLIES TO THOSE CLAIMS.**

The PRLA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997(e)(a).  This rule effectively precludes prisoners from filing suit[43] under federal law until administrative remedies are exhausted.  See Ross v. Cty. of Bernalillo, 365 F.3d at 1184, abrogated by Jones v. Bock, 549 U.S. 199 (holding that failure to exhaust remedies regarding one claim does not warrant dismissal of entire action).  It is the plaintiff's status at the time of filing suit that determines if the plaintiff is an incarcerated prisoner for purposes of the PLRA.  See Norton v. The City of Marietta, OK, 432 F.3d at 1150 (agreeing with sister circuits that "it is the plaintiff's status at the time he files suit that determines whether § 1997e(a)'s exhaustion provision applies.").

The question is therefore whether the PLRA applies to Martinez' claims against Walden, Corizon, Inc., and Armijo.  If Martinez' status at the time he filed his original Complaint -- when he was not incarcerated -- controls, then the PLRA does not apply to his claims against them, because he was not incarcerated.  If, however, his status at the time he filed the FAC -- when he

---

[43]An "action" is a civil or criminal judicial proceeding, "'by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'"  Action, Black's Law Dictionary (10th ed. 2014)(quoting 1 Morris M. Estee, Estee's Pleadings, Practice, and Forms § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)).

was incarcerated -- controls, then the PLRA applies to those claims.  The FAC named Walden, Corizon, Inc., and Armijo Defendants for the first time in this lawsuit.  See MSJ 3 ¶ 3, at 2; MSJs 1 & 3 Response ¶ 2, at 2; FAC ¶¶ 1-38, at 1-5.  The Complaint contained no claims arising out of allegedly improper or inadequate medical care; Martinez brought these claims for the first time in the FAC.  See MSJ 2 § 4, at 4.  Further, it is undisputed that Martinez brought only state law claims in his original Complaint -- asserting negligence against Guadalupe County and the GEO Group -- and that Martinez asserted federal law claims for the first time in his FAC.  See MSJ 2 Response ¶ 3, at 2; MSJ 2 Reply at 3.  An "action" is a civil or criminal judicial proceeding, "'by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.'"  Action, Black's Law Dictionary (10th  ed. 2014)(quoting 1 Morris M. Estee, Estee's Pleadings, Practice, and Forms § 3, at 1 (Carter P. Pomeroy ed., 3d ed. 1885)).  Because the FAC is the first time Martinez sues Walden, Corizon, Inc., and Armijo for violating his federal rights under § 1983, the time when Martinez filed the FAC is effectively when Martinez brought action with respect to his federal claims.  See Rhodes v. Robinson, 621 F.3d at 1005 (explaining that when a plaintiff files an amended complaint, it supersedes the original, and nothing in the PLRA's exhaustion requirement creates an exception to this rule); Cano v. Taylor, 739 F.3d at 1220 (concluding that a district court should use the date of the first amended complaint instead of the date of the original complaint when deciding whether certain claims were exhausted under the PLRA).  Accordingly, it is Martinez' status when he filed the FAC -- and not the original Complaint -- that determines whether the PLRA's exhaustion requirement applies.  Cf. Brown v. Eppler, 725

F. 3d at 1230 (holding that the plaintiff's free status at the filing of his complaint did not prevent the PLRA's exhaustion requirements from applying to the plaintiff's appeal, because the plaintiff was incarcerated when he filed the appeal).

It is undisputed that Martinez was incarcerated at the Lea County Corrections Facility at the time he filed the FAC. See MSJ 1 ¶ 2, at 2; MSJ 3 ¶ 3, at 2; MSJs 1& 3 Response ¶ 2, at 2; id. ¶ 3, at 2; Chavez Aff. ¶¶ 3-4, at 1; Location History at 1-2. Accordingly, the PLRA's exhaustion requirement applies to the federal claims that Martinez asserts against Walden, Corizon, Inc., and Armijo in the FAC, because he was incarcerated at the time he filed the FAC. See Ross v. Cty. of Bernalillo, 365 F.3d at 1184. Thus, the Court must determine whether Martinez properly exhausted the available administrative remedies. If he did not exhaust, the Court must dismiss Martinez' federal claims against Walden, Corizon, Inc., and Armijo.

## II.   THE COURT WILL GRANT SUMMARY JUDGMENT ON MARTINEZ' FEDERAL CLAIMS AGAINST WALDEN BECAUSE MARTINEZ DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO THOSE CLAIMS.

In Count II of the FAC, Martinez alleges that he: (i) "has an Eighth Amendment right to be free from cruel and unusual punishment," FAC ¶ 56, at 8; (ii) "has a Fourteenth Amendment right to bodily integrity protected by the due process clause," FAC ¶ 57, at 8; and (iii) "has the right to be free from abuse of governmental authority for the perverse gratification of governmental actors protected by the Equal Protection Clause," FAC ¶ 58, at 9. Martinez asserts that Walden violated these rights, but does not articulate which specific conduct on Walden's part forms the basis of these claims. Construing the FAC liberally in Martinez' favor, however,

the Court can identify two specific grievances against Walden that could form the basis for Walden's alleged constitutional violations under the Eighth Amendment, the Fourteenth Amendment's Due Process clause, and the Fourteenth Amendment's Equal Protection clause: (i) Walden denied permission for immediate transport of Martinez to the hospital following his ankle injury and informed Guadalupe Facility employees that he would come instead; and (ii) upon Walden's arrival, Walden insisted on performing a painful reduction of Martinez' ankle, without anesthesia and over Martinez' protestations.   In other words, Martinez alleges that the delay in his being taken to the hospital and Walden's insistence of performing the reduction over Martinez' objections violated his rights under the Eight Amendment, the Fourteenth Amendment's Due Process clause, and the Fourteenth Amendment's Equal Protection clause. Martinez further asserts that "Walden used his authority as a high ranking governmental actor in a jail setting to satisfy his perverse desire to humiliate and inflict pain on prisoners."  FAC ¶ 63, at 9.

Walden maintains that Martinez cannot bring suit based on these two grievances, because Martinez did not properly exhaust his administrative remedies as the PLRA requires.  Martinez does not seem to dispute that he was required to exhaust the remedies available to him under New Mexico Correction's Grievance Policy before filing his federal claims against Walden.  See MSJs 1 & 3 Response at 5.   Martinez instead asserts that he did exhaust the available administrative remedies, because: (i) he initiated the grievance process through "discussion," by screaming "[d]on't touch me" and "[g]et me to the hospital," MSJs 1 & 3 Response at 8; (ii) he was taken to the hospital the following day, see MSJs 1 & 3 Response at 8; and (iii) transport to

the hospital was the only relief that Martinez sought and that was available to him under the grievance procedure, so he had no obligation to pursue the grievance process under Ross v. County of Bernalillo, which held that a prisoner exhausts his or her available remedies when he or she has won all the relief available under the applicable administrative procedure, see MSJs 1 & 3 Response at 8-9.   The Court concludes, however, that Martinez failed to exhaust his administrative remedies with respect to his Eighth Amendment, Fourteenth Amendment Due Process, and Equal Protection claims.

The PLRA requires prisoners to exhaust the available administrative remedies before filing a lawsuit alleging federal claims regarding prison conditions, to give prison officials the opportunity to take corrective action that may satisfy the inmate and to reduce the need for litigation.   See Ross v. Cty. of Bernalillo, 365 F. 3d at 1186.   To properly exhaust, the inmate must use the administrative procedures, as the grievance policy in place defines them.   See Jones v. Bock, 549 U.S. at 218.   Here, the New Mexico Correction's grievance policy applicable at the Guadalupe Facility states in pertinent parts:

> Before using the formal grievance procedure, an inmate is expected to attempt to resolve the grievance or particular area of concern informally through discussion with the person or persons responsible for the incident giving rise to the complaint.   The inmate shall first file an informal complaint using the **Inmate Informal Complaint** Form (CD-150501.3) within five calendar days from the date of the incident giving rise to the complaint.   The inmate shall explain in detail his/her complaint and address their complaint to the Unit Manager or designee in units with a Unit Manager and to the Chief of Security or designee in units without a Unit Manager.  If this informal effort fails to resolve the complaint within five working days of receipt of the complaint, the inmate may file an **Inmate Grievance** Form (CD-150501.1).   The inmate must file the formal grievance within 20 calendar days of the date of the incident giving rise to the complaint.

The Unit Manager, Chief of Security, or designees' shall review the inmate complaint and make every effort to resolve the complaint at an informal level within five working days from receipt of the complaint.  A copy of all resolved complaints shall be maintained and a copy given to the inmate.  All non-resolved complaints shall be returned to the inmate to be attached to the formal grievance.

A written formal grievance shall be filed using the **Inmate Grievance Form** (CD-1505001.1).  The non-resolved Inmate Informal Complaint shall be attached to the formal grievance and be submitted to the Grievance Officer by depositing the form(s) in an institutional mailbox, a designated Grievance Box, or by delivering it in person to the Grievance Officer.  **Inmate Grievance** Forms will be readily available to inmates in accessible locations within the institution.  All grievances must be signed by the grievant.  Copies of grievances sent to persons other than the Institutional Grievance Officer will be considered informational copies only, not requiring a response.  The Grievance officer shall notify the grievant of receipt of a grievance on an **Inmate 2-Day Notice of Receipt of Formal Grievance** Form (CD-1505001.2).

The inmate must complete a separate grievance form for each issue grieved.  The inmate must file an individual grievance even though the problem may be shared with other inmates.  A group grievance will be returned to the first name on the list for compliance with this requirement.

Grievances Policy § 150501 ¶¶ 1-3, 5, at 1-2 (emphasis in original).  The record does not contain any evidence indicating that Martinez filed a single written complaint or grievance form regarding Martinez' assertion that Walden violated his Eighth Amendment and Fourteenth Amendment rights.  In other words, Martinez asserts claims in the FAC that, as the record reflects, he never grieved through the New Mexico Correction's grievance process.  While the grievances process plainly encourages informal resolution through "discussion with the person or persons responsible," it goes on to state that the first step of the informal procedure is for the inmate to file an "Inmate Informal Complaint Form (CD-150501.3) within five calendar days

from the date of the incident giving rise to the complaint."  Grievances Policy § 150501 ¶ 1, at 1.

Martinez never filed an "Informal Complaint Form" regarding his medical treatment, as the

Grievances Policy requires.  Grievance Policy § 150501 ¶ 1, at 1.   Further,  Martinez never

"informally discussed" or filed an informal grievance regarding his claim that Walden performed

a reduction of his ankle.  FAC ¶ 60, at 9.  Martinez also did not grieve his claims that Walden's

conduct amounted to "cruel and unusual punishment," or violated his "bodily integrity."  FAC ¶¶

56-57, at 8.

       Moreover, Martinez was required to exhaust the available administrative remedies, even

if the grievance procedure in place could not provide the monetary damages he sought.  See

MSJs 1 & 3 Response at 2.  In Porter v. Nussle, the Supreme Court held that, "[e]ven when the

prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion

is a prerequisite to suit."  534 U.S. at 524.  In other words, exhaustion is required regardless what

relief is offered through the administrative procedures.  See Booth v. Churner, 532 U.S. at 740-

41.  The only justification for failure to exhaust is if there is no relief available.  See Booth v.

Churner, 532 U.S. at 740-41.  If the prisoner is successful in the grievance process, or if prison

officials prevent the prisoner's efforts to use the process, there might be no relief available.  See

Ross v. Cty. of Bernalillo, 365 F. 3d at 1187 (holding that there is no obligation to pursue the

administrative process if nothing in the record suggests further relief was possible); Tuckel v.

Grover, 660 F. 3d 1249, 1252 (10th Cir. 2011)(Lucero, J.)(holding that "intimidation or threats

by prison officials can render an administrative remedy unavailable under the PLRA's

exhaustion provision").  In this case, because the Guadalupe Facility could have provided an

"appropriate remedy" -- such as changing policies or procedures -- Martinez cannot argue either justification is present, because: (i) he was not successful in the grievance process; and (ii) nothing in the record reflects that prison officials attempted to prevent Martinez from using the grievance process.  See Grievance Policy § 150500 at 6-7.

Martinez argues that he informally discussed his desire to go to the hospital with Walden on the day of the incident and again the following day with the Guadalupe Facility's warden, and that, because he was ultimately taken to the hospital, he received the remedy he desired.  See MSJs 1 & 3 Response at 8-9.  The Court is not persuaded.  The Court concludes that, Martinez did not exhaust his remedies simply because he was taken to the hospital.  First, being taken to the hospital was not the only remedy Martinez sought, as Martinez seems to believe that Walden should not be practicing medicine within the prison system and that the Guadalupe Facility should change its policies or procedures.  See, e.g., FAC ¶ 47, at 6.  Second, the Supreme Court recently held in Ross v. Blake, 136 S. Ct. 1850 (2016)(Kagan, J.), that a prisoner's reasonable, although inaccurate, belief that he had exhausted his remedies did not excuse his failure to exhaust.  See 136 S. Ct. at 1855-56.

In sum, the Court concludes that Martinez did not exhaust his administrative remedies with respect to his federal claims against Walden.  See Woodford v. Ngo, 548 U.S. at 90 (holding that prisoner must comply with administrative deadlines and thus cannot exhaust by filing an untimely grievance).  Martinez did not provide the Guadalupe Facility with the opportunity to resolve his claims against Walden before filing suit, as the PLRA requires.

Accordingly, the Court must dismiss Martinez' federal claims against Walden.  See Porter v. Nussle, 534 U.S. at 524 (holding that exhaustion is a mandatory requirement to bring suit).

## III. THE COURT WILL GRANT SUMMARY JUDGMENT ON MARTINEZ' FEDERAL CLAIMS AGAINST CORIZON, INC. AND ARMIJO, BECAUSE MARTINEZ DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO THOSE CLAIMS.

In the FAC's Count IV, Martinez asserts that Corizon, Inc. and Armijo: (i) "owed Plaintiff a duty of care not to confine him in a manner likely to cause injury," FAC ¶ 75, at 11; (ii) that their failure to "address and act on the allegations of abuse against Defendant Walden" meant that they "breached their duty to house Plaintiff in a reasonably prudent manner," FAC ¶ 76, at 11; and (iii) that their conduct amounted to "negligence in running a prison medical facility," FAC ¶ 77, at 11.  Further, in the FAC's Count V, Martinez asserts that Armijo knew of the allegations that Walden abused inmates, but took no action, and that this knowledge "constituted an affirmative act of deliberate indifference which resulted in Plaintiff's constitutional rights being violated."  FAC ¶ 90, at 12.  See FAC ¶ 88, at 12.  Martinez does not point to any specific conduct on Corizon, Inc. or Armijo's part that forms the basis of these claims.  Construing the FAC liberally in Martinez' favor, however, the Court can identify one specific grievance against Corizon, Inc. and Armijo that could form the basis of the alleged constitutional violations: allowing Walden to continue working at the Guadalupe Facility's medical facility despite them knowing or should have known of "Walden's perverse desire to abuse inmates."  FAC ¶ 74, at 10.  Martinez seems to assert that, because Corizon, Inc. and

Armijo continued to employ Walden, Walden was able to commit the alleged conduct described in this Memorandum Opinion and Amended Order's Analysis Section II, <u>supra</u>.

Corizon, Inc. and Armijo argue that Martinez cannot bring this federal claim against them, however, because he did not exhaust his administrative remedies as the PLRA requires. As with Martinez' claims against Walden, there is no evidence in the record showing that Martinez grieved his complaints against Corizon, Inc. and Armijo.  Further, there is no indication that Martinez ever informally discussed his complaints with Armijo, as he alleges he did with Walden.  He also never even initiated the grievance process by filing an Inmate Informal Complaint Form, as the Grievance Policy requires.  Accordingly, as with Martinez' federal claims against Walden, the Court concludes that Martinez did not exhaust his administrative remedies with respect to his federal claims against Corizon, Inc. and Armijo as the PLRA requires.  The Court, therefore, dismisses Martinez' federal claims against Corizon, Inc. and Armijo.

## IV.   BECAUSE NO FEDERAL CLAIMS REMAIN BEFORE THE COURT, THE COURT WILL REMAND MARTINEZ' STATE-LAW CLAIMS AGAINST THE DEFENDANTS TO STATE COURT.

After dismissal of Martinez' federal claims against Walden, Corizon, Inc., and Armijo, the claims remaining before the Court are state law claims: (i) in Count I, Martinez alleges that Guadalupe County, the GEO Group, John Doe, Inc., (unidentified flooring contractor), and John Does 1-6 (unidentified GEO Group employees or agents) "failed to use ordinary care to keep the premises safe for Plaintiff's use and the use of others," FAC ¶ 52, at 7, and "[t]he negligent acts and omissions of Defendants were a direct and proximate cause of Plaintiff's injuries," FAC ¶

53, at 7; (ii) in Count III, Martinez alleges that Walden "acted willfully, recklessly, wantonly, negligently and/or was negligent per se, breaching the duty he owed to Plaintiff in multiple ways," FAC ¶ 68, at 10; and (iii) any claims contained in Count IV and Count V against Corizon, Inc. and Armijo that are not federal claims, FAC ¶¶ 72-91, at 11-12.  The Court need not reach the question whether the Defendants are entitled to summary judgment on these state law claims, because the Tenth Circuit has held that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."  Koch v. City of Del City, 660 F.3d at 1248 (quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d at 1156).  The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726.  The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies.  See Armijo v. New Mexico, 2009 WL 3672828, at *4 ("The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").  The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction[.]'"  Muller v. Culbertson, 408 F. App'x at 197.  Here, the Court has dismissed all of the claims over which it

had original jurisdiction, and there is a potential complex issue of state law in the determination whether N.M. Stat. Ann. § 33-2-11(B) applies to Martinez' claims.  See McGrath v. City of Albuquerque, 2015 WL 4997153, at *60.  Accordingly, the Court declines to exercise supplemental jurisdiction and remands the remaining state law claims to the Second Judicial District Court, County of Bernalillo, State of New Mexico.

IT IS ORDERED that: (i) Defendant Dr. Mark E. Walden's Motion for Summary Judgment, filed April 2, 2015 (Doc. 38)("Walden Motion"), is granted in part; (ii) the requests in Defendant[s] Corizon & Katherine Armijo's Motion for Summary Judgment and Joinder & Adoption of Defendant Mark E. Walden's Motion for Summary Judgment [Doc. #38] and Defendant Mark. E. Walden's Memoranda Brief in Support of Motion for Summary Judgment [Doc. #39] and Defendants Guadalupe County and GEO's Motion for Summary Judgment (Regarding Failure to File Tort Claim Notice and Failure to Exhaust Administrative Remedies) and Memorandum of law in Support and Statement of Additional Authorities, filed April 6, 2015 (Doc. 41)("MSJ 3"), are granted in part; (iii) all federal claims are dismissed without prejudice; and (iv) this case and the remaining state law claims are remanded to the Second Judicial District Court, County of Bernalillo, State of New Mexico.  The Court grants in part summary judgment -- on Martinez' federal claims against Walden, Corizon, Inc., and Armijo -- and dismisses these federal claims without prejudice.  The Court leaves for the state court to decide whether Walden, Corizon, Inc., and Armijo are entitled to summary judgment on Martinez' state law claims.  The Court also leaves the Defendants Guadalupe County and GEO's Motion for Summary Judgment (Regarding Failure to File Tort Claim Notice and Failure to Exhaust Administrative Remedies)

and Memorandum of Law in Support, filed April 6, 2015 (Doc. 40)("MSJ 2"), for the state court

to decide.   Finally, because no federal claims remain before the Court and because Walden

removed this case from state court, the Court remands Martinez' case and remaining state law

claims to the Second Judicial District Court, County of Bernalillo, State of New Mexico.


_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Roger I. Smith
Stephen C. O'Brien
Revo/Smith Law Firm, LLC
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Patrick D. Allen
Michael D. Russell
Yenson, Allen & Wosick, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendants Guadalupe County and the GEO Group, Inc.*

Nicole M. Charlebois
Anthony David Griego
Chapman & Charlebois, P.C.
Albuquerque, New Mexico

     *Attorneys for Defendant Mark E. Walden*

Norman F. Weiss
Simone, Roberts & Weiss, P.A.

Albuquerque, New Mexico

*Attorneys for Defendants Corizon, Inc. and Katherine Armijo*